**2025-2041, -2045**

# United States Court of Appeals
# for the Federal Circuit

---

MEDIA CONTENT PROTECTION LLC,

*Plaintiff-Appellant,*

– v. –

REALTEK SEMICONDUCTOR CORPORATION,
MEDIATEK, INC., MEDIATEK USA, INC.,

*Defendants-Appellees.*

---

*On Appeal from the United States District Court for the
District of Delaware in Nos. 1:20-cv-01247-CFC-LDH and
1:20-cv-01246-CFC-LDH, Honorable Colm F. Connolly, Chief Judge*

---

## BRIEF FOR PLAINTIFF-APPELLANT

MICHAEL RENAUD
WILLIAM MEUNIER
TIMOTHY J. ROUSSEAU
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, PC
One Financial Center
Boston, Massachusetts 02111
(617) 348-1845
mtrenaud@mintz.com
wameunier@mintz.com
tjrousseau@mintz.com

PETER F. SNELL
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, PC
919 Third Avenue, 38th Floor
New York, New York 10022
(212) 935-3000
pfsnell@mintz.com

JEFFREY A. LAMKEN
MICHAEL G. PATTILLO JR.
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000
jlamken@mololamken.com
mpattillo@mololamken.com

*Counsel for Plaintiff-Appellant*

FEBRUARY 9, 2026

 COUNSEL PRESS    (800) 4-APPEAL • (387921)

# U.S. PATENT NO. 10,298,564

(element labels added)

1. A second device for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:

[a] provide a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;

[b] receive the first signal when the certificate indicates that the second device is compliant with at least one compliance rule;

[c] create a second signal, wherein the second signal is derived from a secret known by the second device;

[d] provide the second signal to the first device after receiving the first signal, wherein the second signal is received by the first device; and

[e] receive the protected content from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.

CERTIFICATE OF INTEREST

**Case Numbers:**   2025-2041, 2025-2045

**Short Case Caption:** *Media Content Protection LLC v. Realtek Semiconductor Corporation, MediaTek, Inc., MediaTek USA, Inc.*

**Filing Party/Entity:** Plaintiff-Appellant Media Content Protection LLC

I certify the following information is accurate and complete to the best of my knowledge.

Date: February 9, 2026          */s/ Peter F Snell*
                                Peter F. Snell

**Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

Appellant Media Content Protection LLC

**Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None/Not Applicable

**Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None/Not Applicable

**Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R 47.4(a)(4).

**Farnan LLP**
     Brian E. Farnan (Farnan LLP)
     Michael J. Farnan (Farnan LLP)
     Rosemary Jean Piergiovanni (Farnan LLP)

ii

**Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.**
  Adam R. Banes
  Adam S. Rizk
  Catherine Cheng Xu
  Courtney P. Herndon
  Gabriella J. Flick
  Hannah M. Edge
  Michael J. McNamara
  Nana Liu
  Sean M. Casey
  Tawfik A. Goma
  Tianyi Tan
  Williams S. Dixon
  Meena Seralathan (formerly)
  Andrew H. DeVoogd (formerly)

**Related Cases** – Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

No other appeal in or from the same civil action was previously before this or any other appellate court.

The following appeals involved U.S. Patent No. 9,436,809, which shares a common specification and priority claim with the patent at-issue in this appeal:

- *Intel Corp. v. Koninklijke Philips N.V.*,
  Nos. 2022-2034, 2022-2035,
  2024 WL 725243 (Fed. Cir. Feb. 22, 2024)
  (Judges Prost, Taranto, and Chen)
  Originating Tribunal: IPR2021-00327, IPR2021-00370 (PTAB).

The following appeal is currently pending before this Court and involves U.S. Patent Nos. 9,436,809 and 10,091,86 Patents, which share a common specification and priority claim with the patent at-issue in this appeal:

- *Media Content Protection LLC v. Intel Corporation*,
  No. 2026-1237 (Fed. Cir.)
  Originating Tribunal: No. 1:20-cv-01243 (D. Del.).

The following district court cases are currently stayed pending the resolution of the cases underlying this appeal and the appeal in Case No. 2026-1237 and may be directly affected by this Court's decision in this appeal:

- *Media Content Protection LLC v. Dell Technologies Inc. and Dell Inc.*,
  No. 1:20-cv-01240 (D. Del.);

- *Media Content Protection LLC v. HP Inc.*,
  No. 1:20-cv-01241 (D. Del.);

- *Media Content Protection LLC v. Lenovo (United States) Inc.*,
  No. 1:20-cv-01242 (D. Del.);

- *Media Content Protection LLC v. Hisense Co. Ltd, Hisense Visual Technology Co. Ltd. (f/k/a Qingdao Hisense Electronics Co. Ltd.), Hisense Electronics Manufacturing Company of America Corporation, Hisense USA Corporation, Hisense Import & Export Co. Ltd., Hisense International Co., Ltd., Hisense International (HK) Co., Ltd., and Hisense International (Hong Kong) America Investments.*,
  No. 2:20-cv-08546 (C.D. Cal.).

**Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None/Not Applicable

# TABLE OF CONTENTS

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT ........................................................4

STATEMENT OF ISSUES ....................................................................4

STATEMENT OF THE CASE .................................................................5

   I.     The '564 Patent Advances the Technology for Secure
        Transfer of Digital Content ......................................................5

      A.    The Shortcomings of the Prior Art *Brands-Chaum*
           Distance-Bounding Computer.....................................6

      B.    The '564 Patent Provides a Technological Solution for
           Secure Transfer of Digital Content Using Authenticated
           Distance Measurement ..................................................8

   II.    Proceedings Concerning the '564 and Related Patents...........13

      A.    This Court and the PTAB Uphold the '564 Patent and
           Related Patents Against Obviousness Challenges .............13

      B.    The ITC Finds the Asserted Claims Patent-Eligible Under
           § 101.................................................................................15

      C.    The District Court Holds That the Asserted Claims Are
           Not Patent-Eligible Under § 101 .......................................16

SUMMARY OF ARGUMENT .............................................................22

STANDARD OF REVIEW...................................................................25

ARGUMENT .....................................................................................26

   I.     The '564 Patent Is "Directed to" Concrete Improvements to
        Technology for Secure Transfer of Protected Digital
        Content—Not an Abstract Idea .................................................27

      A.    The '564 Patent Claims a Specific Technological Solution
           for Securely Transferring Protected Digital Content Using
           Authenticated Distance Measurement................................27

         1.    The Asserted Claims Are Directed to a Patent-Eligible
               Improvement to the *Brands-Chaum* Distance-
               Bounding Computer ..................................................27

2. The Asserted Claims Represent the Type of Technological Improvement This Court Has Found Patent-Eligible at Step One ............................................. 33

B. The District Court Committed Multiple Errors in Finding the Claims Directed to an Abstract Idea at Step One ......................... 37

1. The District Court Improperly Read "First Device," "Transmitter" Elements Out of the Claims ................................... 37

2. The District Court's Analysis of the Claim Limitations Defies Both Precedent and the Patent's Disclosures .................... 41

3. The District Court Misapplied This Court's § 101 Precedent ......................................................................... 47

II. The Asserted Claims Contain an "Inventive Concept" That Represents a Patentable Advance Over the Prior Art Under *Alice* Step Two ......................................................................... 49

A. The Asserted Claims Recite a Specific, Inventive Solution to Authenticated Content Transfer, Whether the Elements Are Considered Individually or in Combination ................................ 50

1. The Receiver's Authentication With a Certificate Indicating Compliance With a Compliance Rule (Claim Elements 1[a]–[b]) Was Inventive ..................................... 51

2. The Receiver's Creation of a Second Signal Based on a Shared Secret to Enable Authenticated Distance Assessment (Claim Elements 1[b]–[e]) Was Inventive ................. 52

3. The Ordered Combination of Claim Elements Was Inventive ......................................................................... 57

B. The District Court's Perfunctory Step Two Analysis Cannot Be Sustained ......................................................... 59

CONCLUSION ............................................................................. 61

## Cases

*Alice Corp. v. CLS Bank Int'l,*
   573 U.S. 208 (2014).................................................................*passim*

*Allstate Prop. & Cas. Ins. Co. v. Squires,*
   667 F.3d 388 (3d Cir. 2012) .............................................................25

*Ancora Techs., Inc. v. HTC Am., Inc.,*
   908 F.3d 1343 (Fed. Cir. 2018) .................................................*passim*

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC,*
   827 F.3d 1341 (Fed. Cir. 2016) .................................................57, 61

*Berkheimer v. HP Inc.,*
   881 F.3d 1360 (Fed. Cir. 2018) .........................................26, 44, 60

*CardioNet, LLC v. InfoBionic, Inc.,*
   955 F.3d 1358 (Fed. Circ. 2020)................................................26, 28

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
   927 F.3d 1306 (Fed. Cir. 2019) .................................................*passim*

*Certain Digital Video-Capable Devices and Components Thereof,*
   Inv. No. 337-TA-1224,
   2022 WL 13027228 (ITC Apr. 25, 2022)..........................................16

*Certain Digital Video-Capable Devices and Components Thereof,*
   No. 337-TA-1224,
   2021 WL 2375006 (ITC May 24, 2021)....................15, 22, 40, 42

*Certain Digital Video-Capable Devices and Components Thereof,*
   No. 337-TA-1224,
   2021 WL 6071754 (ITC Oct. 21, 2021) ...................................*passim*

*Coop. Ent., Inc. v. Kollective Tech., Inc.,*
   50 F.4th 127 (Fed. Cir. 2022) ...................................................26, 61

*CosmoKey Solutions GmbH v. Duo Security LLC,*
   15 F.4th 1091 (Fed. Cir. 2021) ..................................................*passim*

*Data Engine Techs. LLC v. Google LLC,*
   906 F.3d 999 (Fed. Cir. 2018) ...........................................25, 26, 61

*Diamond v. Diehr,*
   450 U.S. 175 (1981)............................................................................45

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ....................................................28, 49

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ............................................28, 50, 60

*Imation Corp. v. Koninklijke Philips Elecs. N.V.*,
    586 F.3d 980, 984–85 (Fed. Cir. 2009) .............................................25

*Intel Corp. v. Koninklijke Philips N.V.*,
    IPR2021-00327,
    2022 WL 1617415 (PTAB May 12, 2022) .............................7, 14, 56

*Intel Corp. v. Koninklijke Philips N.V.*,
    IPR2021-00370,
    2022 WL 1618012 (PTAB May 12, 2022) .............................7, 14, 56

*Intel Corp. v. Koninklijke Philips N.V.*,
    Nos. 2022-2034, 2022-2035,
    2024 WL 725243 (Fed. Cir. Feb. 22, 2024) ...............................*passim*

*INVT SPE LLC v. U.S. Int'l Trade Comm'n*,
    46 F.4th 1361 (Fed. Cir. 2022) ..............................................18, 19, 40

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) .....................................................41, 42

*McRO, Inc v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ....................................................37, 39

*Packet Intel. LLC v. Net Scout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ....................................................20, 41

*PowerBlock Holdings, Inc. v. iFit, Inc.*,
    146 F.4th 1366 (Fed. Cir. 2025) ..................................................24, 44

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ..................................................48

*TCL Indus. Holdings Co. v. Koninklijke Philips N.V.*,
    IPR2021-00497, Paper 10 (PTAB Aug. 17, 2021)..............................56

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) ...............................................*passim*

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ........................................................47

*Weisner v. Google LLC,*
    51 F.4th 1073 (Fed. Cir. 2022) ............................................................28

**Statutes and Rules**

28 U.S.C. §1295 ......................................................................................4

28 U.S.C. §1331 ......................................................................................4

28 U.S.C. §1338 ......................................................................................4

35 U.S.C. §101 ........................................................................................2

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| '186 Patent | U.S. Patent No. 10,091,186 (Appx141–51) |
| '564 Patent | U.S. Patent No. 10,298,564 (Appx29–39) |
| '809 Patent | U.S. Patent No. 9,436,809 (Appx129–38) |
| '977 Patent | U.S. Patent No. 9,590,977 (Appx154–63) |
| Dell | Dell Technologies Inc. and Dell Inc. |
| *Dell* Case | *Media Content Protection LLC v. Dell Techs. Inc. et. al.*, No. 1:20-cv-01240-CFC-LDH (D. Del.) |
| district court | United States District Court for the District of Delaware in Case Nos. 1:20-cv-01246-CFC-LDH, 1:20-cv-01247-CFC-LDH, Chief Judge Colm F. Connolly |
| DTCP | Digital Transmission Content Protection |
| HDCP | High-bandwidth Digital Content Protection |
| HiSense | Hisense Co. Ltd, Hisense Visual Technology Co. Ltd. (f/k/a Qingdao Hisense Electronics Co. Ltd.), Hisense Electronics Manufacturing Company of America Corporation, Hisense USA Corporation, Hisense Import & Export Co. Ltd., Hisense International Co., Ltd., Hisense International (HK) Co., Ltd., and Hisense International (Hong Kong) America Investments |
| *HiSense* Case | *Media Content Protection LLC v. Hisense Co. et al.*, No. 2:20-cv-08546 (C.D. Cal.) |
| HP | HP Inc. |
| *HP* Case | *Media Content Protection LLC v. HP Inc.*, No. 1:20-cv-01241-CFC-LDH (D. Del.) |
| Intel | Intel Corporation |
| *Intel* Case | *Media Content Protection LLC v. Intel Corp.*, No. 1:20-cv-01243-CFC-LDH (D. Del.) |

| | |
|---|---|
| IPR | *inter partes* review |
| ITC | U.S. International Trade Commission |
| ITC Investigation | *Certain Digital Video-Capable Devices and Components Thereof*, No. 337-TA-1224 (ITC) |
| Lenovo | Lenovo (United States) Inc. |
| *Lenovo* Case | *Media Content Protection LLC v. Lenovo (United States) Inc.*, No. 1:20-cv-01242-CFC-LDH (D. Del.) |
| LG | LG Electronics Inc. and LG Electronics U.S.A. Inc. |
| *LG* Case | *Koninklijke Philips N.V. v. LG Elecs. Inc. et al.*, No. 1:20-cv-01244-CFC (D. Del.) |
| MCP | Plaintiff-Appellant Media Content Protection LLC |
| MediaTek | Defendant-Appellee MediaTek, Inc. and MediaTek USA, Inc. |
| *MediaTek* Case | *Media Content Protection LLC v. MediaTek, Inc. et al.*, No. 1:20-cv-01246-CFC-LDH (D. Del.) |
| Philips | Koninklijke Philips N.V. ("Philips NV") and Philips North America LLC ("Philips NA") |
| PTAB | Patent Trial and Appeal Board |
| TCL | TTE Technology, Inc., TCL Corp., TCL Electronics Holdings Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL Moka Int'l Ltd., TCL Overseas Marketing Ltd., and TCL Industries Holdings Co., Ltd. |
| *TCL* Case | *Koninklijke Philips N.V. v. TTE Tech., Inc. et al.*, No. 2:20-cv-01406 (C.D. Cal.) |
| Realtek | Defendant-Appellee Realtek Semiconductor Corporation |

| | |
|---|---|
| *Realtek* Case | *Media Content Protection LLC v. Realtek Semiconductor Corp.*, No. 1:20-cv-01247-CFC-LDH (D. Del.) |
| RTT | round-trip time |
| USPTO | U.S. Patent and Trademark Office |

**\* Note:** All emphasis in the brief has been added unless otherwise indicated.

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this or any other appellate court.

The following appeals involved the '809 Patent, which shares a common specification and priority claim with the '564 Patent at issue in this appeal:

- *Intel Corp. v. Koninklijke Philips N.V.*,
  Nos. 2022-2034, 2022-2035,
  2024 WL 725243 (Fed. Cir. Feb. 22, 2024)
  (Judges Prost, Taranto, and Chen).

The following appeal is currently pending before this Court, has been designated as a companion case to this appeal (D.I. 18), and involves the '809 and '186 Patents, which share a common specification and priority claim with the '564 Patent at issue in this appeal:

- *Media Content Protection LLC v. Intel Corporation*,
  No. 2026-1237 (Fed. Cir.).

The following district court cases are currently stayed pending the resolution of the cases underlying this appeal and the appeal in Case No. 2026-1237 and may be directly affected by this Court's decision in this appeal:

- *Media Content Protection LLC v. Dell Techs. Inc. et al.*,
  No. 1:20-cv-01240 (D. Del.);

- *Media Content Protection LLC v. HP Inc.*,
  No. 1:20-cv-01241 (D. Del.);

- *Media Content Protection LLC v. Lenovo (United States) Inc.*,
  No. 1:20-cv-01242 (D. Del.); and

- *Media Content Protection LLC v. Hisense Co. Ltd. et al.*, No. 2:20-cv-08546 (C.D. Cal.).

This case concerns a groundbreaking invention for securely transferring protected digital content between devices to prevent unauthorized copying and distribution. The patent at issue—U.S. Patent No. 10,298,564 (the "'564 Patent")—involves the combination of authentication protocols with a "distance-bounding" protocol. The claimed distance-bounding technology allows a device to access digital content only if the device is authorized and in physical proximity to the content source. It ensures that the distance measurement is conducted with the authenticated device, preventing the interposition of some other unauthenticated device.

Distance-bounding technology was known at the time of the patent, as exemplified by the "*Brands-Chaum*" computer. But existing technology was not suitable for content protection. While *Brands-Chaum* could tell that *a* device was nearby, it was not capable of determining whether the device was ***authenticated*** to receive protected content. The invention here solved that problem. The patent discloses and claims a receiver that provides a transmitter with a certificate that authenticates the receiver as compliant with a compliance rule, and uses a "shared secret" to create and return a signal to the transmitter. The receiver receives protected content once the transmitter determines that the signal sent by the receiver is derived from the shared secret, and that the time between the sending and receiving of those

same signals is less than a predetermined time. In that way, the invention ensures that the receiver is both authenticated and located near the transmitter. This Court and the USPTO have determined that the solution was nonobvious. To the contrary, employing a multi-bit signal to measure proximity, as the invention necessarily requires, contradicted the teachings of the prior art.

The district court nonetheless held the asserted claims invalid under 35 U.S.C. § 101. Granting judgment on the pleadings, the court ruled that the patent is merely directed to the abstract idea of "authenticated content transfer." But the court committed legal error at both steps of the § 101 analysis required by *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

At *Alice* step one, the court found that the patent was not directed to a specific technical solution of performing authenticated digital content transfer. But the court ignored all the claim limitations specifying exactly ***how*** the invention performs authenticated content transfer. And the court failed to faithfully apply this Court's precedents, candidly "confess[ing]" that it was "unable to understand" how this Court had found similar claims to be sufficiently "'specific' or 'technological'" and therefore patent-eligible in *CosmoKey Solutions GmbH v. Duo Security LLC*, 15 F.4th 1091 (Fed. Cir. 2021). Appx16. That conceded inability "to understand" what constitutes a technological improvement was fatal to the district court's decision.

The district court compounded its error at *Alice* step two by summarily deciding that the patent lacks an inventive concept because its claims merely "combine nonspecific, conventional authentication techniques in a non-inventive way." Appx18. But the patent expressly teaches a specific technological improvement over the then-state-of-the-art *Brands-Chaum* computer, which "does not allow authenticated device compliancy testing." Appx35 (2:31–39). Indeed, that art warned against the patent's chosen solution. For that reason, this Court and the PTAB have held that the invention claimed here and in related patents are nonobvious advances over *Brands-Chaum* and other art. If the inventions would not have been **obvious** to a skilled artisan, then they cannot have been a **conventional** combination of **conventional** authentication techniques. At a bare minimum, there was a fact question regarding the invention's conventionality that the district court was not free to resolve at the pleading stage.

The asserted claims are not directed to an unpatentable law of nature, natural phenomenon, or abstract idea, but to the type of technological improvement to computer security that employs a specific, unconventional technique to solve a specific problem in the prior art that this Court has repeatedly upheld as patent-eligible. Reversal is warranted.

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). It issued final judgments on August 11 and 15, 2025. Appx26–27; Appx27–28. MCP timely filed notices of appeal on August 22, 2025. Appx1884–86; Appx1887–89. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF ISSUES

1.      Whether the district court erred in holding that the asserted claims are directed to the abstract idea of "authenticated content transfer" under *Alice* step one when (a) the district court identified the abstract idea by ignoring the words of the claims; (b) the claims recite a technological improvement over the *Brands-Chaum* computer described in the patent's specification and prosecution history; and (c) the district court "confess[ed]" this Court's *CosmoKey* decision supports a finding of patent eligibility.

2.      Whether the district court erred in concluding that the asserted claims lack an inventive concept under *Alice* step two when it (a) failed to draw all reasonable inferences in patent owner's favor that the claims are directed to unconventional combinations of unconventional elements in considering defendant's motion for judgment on the pleadings and (b) made unsupported factual findings as to alleged conventionality that were contrary to the pleadings, the

patent's specification, and prior decisions from this Court and the PTAB holding the claimed inventions nonobvious.

**STATEMENT OF THE CASE**

This case involves a technological solution to the technological problem of controlling access to protected content. The '564 Patent and related patents have survived repeated challenges before the PTAB, on appeal to this Court, and before the ITC. But the district court held the asserted claims invalid under § 101 for lack of patentable subject matter. Appx1884–86; Appx1887–89. Both judgments under review are based on the district court's Memorandum Opinion (Appx1–19; 2025 WL 2105785) and Order (Appx20) granting Realtek's Motion for Judgment on the Pleadings, which applies equally in the MediaTek Case (Appx21–23; Appx1881–83).

## I. THE '564 PATENT ADVANCES THE TECHNOLOGY FOR SECURE TRANSFER OF DIGITAL CONTENT

The '564 Patent at issue here is one member of a family of patents—also including U.S. Patent Nos. 9,436,809 (the "'809 Patent") and 10,091,186 (the "'186 Patent")—invented by Philips engineer Franciscus Kamperman and originally issued to Philips NV. *See* Appx29. The patents share a common specification and priority claim to European Patent Application No. EP02078076, filed July 26, 2002. Appx29; Appx129–38; Appx141–51.

The advent of digital content has given rise to problems of copy protection. As the patent explains, digital content is much easier to copy and pirate than analog content. Appx35(1:44–64). And digital content is particularly susceptible to piracy when digital data is transferred between devices, such as when it is downloaded over the Internet. Appx35(2:3–27). A "slew of copy protection and [digital rights management] systems and methods" have been developed to combat that problem, often using "technologies such as encryption, watermarking and right descriptions (*e.g.*, rules for accessing and copying data)." Appx35(1:65–2:2).

The '564 Patent discloses a new technology for securely transferring digital content between two devices that "combines a distance measurement protocol with an authentication protocol." Appx35(2:55–56). The claims at issue focus on the receiver device or computer; the claims of the '809 and '186 Patents, not asserted in this case, focus on the transmitter.

## A. The Shortcomings of the Prior Art *Brands-Chaum* Distance-Bounding Computer

The '564 Patent discloses that one way to prevent unauthorized use or sharing of digital content is to require ***physical proximity*** to an authorized licensee by, for example, limiting distribution to a local network instead of the global Internet. Appx35(1:44–64, 2:14–27); *see also* Appx1493(19:12–22). Before the patent, distance-bounding computers were exemplified by the *Brands-Chaum* computer,

Appx1372–87, discussed in the specification and considered during prosecution. Appx30, Appx35 (2:31–39).

To achieve distance confirmation, *Brands-Chaum* used rapid, single-bit exchanges to determine an upper bound on the distance between two devices. Using the speed of light, *Brands-Chaum* calculates that distance based on the time it takes for a signal to travel between the devices. Appx1373–76; Appx35 (2:31–39). Because light travels extremely fast, this Court has explained, the use "of a ***single-bit*** challenge and rapid ***single-bit*** response" was "an '***essential*** element' of [*Brands-Chaum*'s] distance-bounding protocol." *Intel Corp. v. Koninklijke Philips N.V.*, Nos. 2022-2034, 2022-2035, 2024 WL 725243, at *1 (Fed. Cir. Feb. 22, 2024) (emphasis in original). Using multi-bit messages "would create unwanted delays, which in turn would render the distance measurement inaccurate and impair security." *Id.*

The '564 Patent explains that *Brands-Chaum*'s use of ***single-bit*** messages meant that it "does not allow ***authenticated*** device compliancy testing," which requires multi-bit exchanges. Appx35 (2:34–39). As the PTAB found, and this Court affirmed, the multiple-bit exchanges required for authentication and compliance testing were fundamentally "incompatible" with *Brands-Chaum*. *Intel Corp. v. Koninklijke Philips N.V.*, IPR2021-00327, 2022 WL 1617415, at *10 (PTAB May 12, 2022); *Intel Corp. v. Koninklijke Philips N.V.*, IPR2021-00370, 2022 WL

1618012, at *10 (PTAB May 12, 2022); *Intel*, 2024 WL 725243, at *1. As a result, *Brands-Chaum* could only establish that two ***anonymous*** devices were near each other. *Id.*

Thus, before the patented invention, prior art computers could use round-trip time methods only for determining proximity with ***unauthenticated*** receivers of ***unknown compliance***. Appx35(2:31–39); Appx1373–76. The patent here describes the dangers of the transmitter performing the distance assessment in relation to an unauthenticated, non-compliant device near the transmitter. Appx36(3:9–16). Communicating with an unauthenticated device reduces system security because it is unknown how the unauthenticated device will treat the content, including whether the device will copy or redistribute the content. Performing distance assessment with a nearby but unauthenticated device does not prevent the device from retransmitting the content to a faraway device in violation of the distance-limiting requirement. Appx36(3:9–16).

**B.    The '564 Patent Provides a Technological Solution for Secure Transfer of Digital Content Using Authenticated Distance Measurement**

As the patent explains, its claimed invention solves the critical shortcoming of the prior art *Brands-Chaum* distance-bounding computer—it uses multi-bit transmissions that enable "performing authenticated distance measurement between the first communication device and a second communication device."

Appx35 (2:43–46). In other words, the invention enables the transmitter to determine not only that *a device* is nearby, but that *an authenticated, compliant receiver* is nearby before allowing the receiver to receive the protected content.[1]

The patent explains that, "to enable secure communication between devices," the receiver "can first be tested on compliancy before a distance measurement is executed." Appx35 (2:56–60). This element involves "checking if the identification of the [receiver] is compliant with an expected identification"—that is, making sure that the receiver "really is the device that it should be." Appx36 (3:62–66). The patent further explains that the "identity [of the receiver] could be obtained by checking a certificate stored in the [receiver]." Appx36 (3:66–67).

Representative claim 1 reflects that requirement, reciting that the receiver (the "second device") includes a processor circuit arranged to execute instructions to "provide a certificate to the first device [the transmitter] prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device," and that the certificate "indicates that the second device is compliant with at least one compliance rule." *E.g.*, Appx36–38 (Fig. 2,

---

[1] *See also* Appx1135 (94:8–12) (inventor confirming he had "the idea of combining [a secure authenticated channel] between two entities and [a] technique to measure geographical distance between two entities"); Appx1148 (88:7–15) (inventor confirming that "the idea [he] came up with … combine[d] two things. … The first one being a distance measurement protocol and the other one being an authentication protocol ….").

3:62–67, 5:63–6:23, elements 1[a]–[b]). Under the stipulated claim construction in this case, the certificate must include "at least the entity's distinguishing identifier and public key, and [be] signed by a certification authority to guard against forgery." Appx1484; *see also* Appx35–36 (2:2–7, 3:46–50, 3:62–66).

The invention further requires that the transmitter and receiver "share" a cryptographic "common secret" that is ***also*** to be "used in performing the distance measurement" between the two devices. Appx35 (2:43–49). The transmitter can share the secret with the receiver after determining that the receiver "is complaint" with the "predetermined compliance rules." Appx36 (3:46–53). The specification explains that "secure way[s] of … ensur[ing] that only devices being compliant with compliance rules can receive the secret" were known in the art, including certain "key transport mechanisms" and "key agreement protocol[s]." Appx36 (3:54–61).

The claim thus recites that, after the receiver has been found compliant with the compliance rule, the distance-bounding determination is performed using the shared secret (elements 1[a]–[b]). The receiver receives a "first signal" from the transmitter (element 1[b]). The receiver then "create[s] a second signal, wherein the second signal is derived from" the shared secret (element 1[c]). The transmitter "determines [whether] the second signal" it receives "is derived from the [devices' shared] secret" (elements 1[d]–[e]).

Once the transmitter determines the second signal is derived from the shared secret, the receiver "receive[s] protected content from the" transmitter if the "time between sending of the first signal and receiving of the second signal [sometimes referred to as "round-trip time" or "RTT"] is less than a predetermined time." (element 1[e]). Under the stipulated claim construction in this case, "predetermined time" means "a time interval selected to ensure that the first and second communication devices are sufficiently near one another to permit access to the protected content, where sufficiently near refers to physical proximity." Appx1484; *see also* Appx1493 (19:12–20:6).

The use of the recited "predetermined time" to perform the distance measurement is crucial to making the secure authentication possible. As explained above, *Brands-Chaum* determined physical proximity by relying on the speed of light to determine distance, which necessitated the use of single-bit messages because multi-bit messages would create unwanted delays and render distance measurement inaccurate. Appx1373–76. The patent's use of a "predetermined time" instead ensures physical proximity by ensuring that content remains within a local network and is not transmitted over the Internet. Appx35 (2:16–27). As plaintiff's counsel explained immediately before the stipulated construction was entered:

> [T]he intrinsic record … teaches that when you have a round trip time that's being used between two devices on an ethernet network, that's indicative of physical proximity, and it's a distinguisher from those devices if

> they attempt to reach out to the internet, for example. …
> The predetermined time check will fail, and the device will
> not be permitted to send content out over the internet.

Appx1493 (19:12–17). Because the invention's novel approach to determining physical proximity does not rely on directly comparing the messages' timing to the speed of light to determine physical distance, it made it possible to use multi-bit messages, such as the first and second signals, to confirm ***both*** that the receiver is in physical proximity and is authenticated.

The receiver's second signal, created based on the shared secret, thus provides the transmitter with information it can use to determine that the second signal came from the authenticated receiver that was subject to the certificate-based compliancy testing, rather than an unauthenticated device that may copy or redistribute the content without authorization. Appx35–37 (2:63–3:3, 5:39–46, 6:33–38). In this manner, the same first and second signals used to determine proximity can also be used (in combination with the shared secret) to ensure that the distance assessment is being performed with the correct (authenticated) device before protected content is shared (element 1[e]). Appx36 (3:9–20). The patent explains that the use of the shared secret ensures "that the distance will not be measured to a third communication device (not knowing the secret)." Appx36 (3:9–20). And "[b]y using authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." Appx36 (4:9–11).

## II.  PROCEEDINGS CONCERNING THE '564 AND RELATED PATENTS

Philips sued MediaTek and Realtek and their customers in district court for infringing the '564 Patent based on processors, televisions, and computer monitors that implement High-bandwidth Digital Content Protection version 2 ("HDCP 2"). *MediaTek* Case, D.I. 1, ¶20 (Sept. 17, 2020); *Realtek* Case, D.I. 1, ¶18 (Sept. 17, 2020); *see also* Appx1560 (¶20); Appx1628 (¶31).[2] Philips separately sued Intel and others for infringing the '809 and '186 Patents based on their HDCP 2 transmitter products;[3] the *Intel* Case is the subject of related appeal No. 2026-1237. Philips later assigned the patents to MCP, which has been substituted as plaintiff. Appx1543–49.

### A.  This Court and the PTAB Uphold the '564 Patent and Related Patents Against Obviousness Challenges

Various accused infringers filed IPR petitions against the asserted patents. TCL filed one against the '564 Patent (IPR2021-00497) and three against the related '977 Patent (IPR2021-00495, IPR2021-00496, IPR2021-00547). Intel filed two against the '809 Patent (IPR2021-00327, IPR2021-00370) and one against the '186 Patent (IPR2021-00328). The PTAB denied the petitions challenging the '564 and '977 Patents on the merits. "Petitioner has not demonstrated," the PTAB ruled, "a reasonable likelihood that it would prevail in showing the unpatentability of at least

---

[2] *See also Dell* Case, D.I. 1 (Sept. 17, 2020); *HP* Case, D.I. 1 (Sept. 17, 2020); *Lenovo* Case, D.I. 1 (Sept. 17, 2020); *LG* Case, D.I. 1 (Sept. 17, 2020); *TCL* Case, D.I. 1 (Sept. 12, 2020); *Hisense* Case, D.I. 1 (Sept. 17, 2020).

[3] *Supra* n.2; *Intel* Case, D.I. 1 (Sept. 17, 2020).

one of the challenged claims." Appx413; Appx417; Appx421; Appx425. The PTAB

denied the petition challenging the '186 Patent for discretionary reasons. Appx406.

The PTAB, however, instituted IPRs on the two petitions challenging the '809

Patent, based in part on the *Brands-Chaum* reference. It then upheld the '809 Patent,

holding it would not have been obvious to skilled artisans to modify the *Brands-*

*Chaum* computer to achieve the claimed invention. In particular, the PTAB ruled

that *Brands-Chaum* specifically taught use of a single-bit signal to measure the

distance between devices and that the multi-bit signals required to practice the claims

here were incompatible. *Intel*, 2022 WL 1617415, at *7–11; *Intel*, 2022 WL

1618012, at *7–11.

This Court affirmed. The Court noted that *Brands-Chaum* itself taught "that

an '**essential** element' of its distance-bounding protocol 'consists of a ***single-bit***

challenge and rapid ***single-bit*** response.'" *Intel*, 2024 WL 725243, at *1 (emphasis

in original) (quoting *Brands-Chaum*, Appx1373). The Court thus found that

substantial evidence supported the PTAB's determination that "*Brands-Chaum*'s

teachings are incompatible" with "multi-bit authentication protocols," such as those

the patent requires here. *Id.* The evidence showed that, in the prior art, "transmitting

a multi-bit message would create unwanted delays, which in turn would render the

distance measurement inaccurate and impair security." *Id.*

## B.    The ITC Finds the Asserted Claims Patent-Eligible Under § 101

Philips also instituted ITC proceedings against Realtek, MediaTek, and others to exclude infringing products. The ALJ rejected the respondents' argument that the asserted claims were patent-ineligible under § 101, and the Commission affirmed.

The ALJ first rejected the § 101 challenge in denying a request for summary adjudication. The asserted claims, the ALJ ruled, are "***plainly directed to eligible subject matter at Alice step one***" because they claim a specific improvement to receiver computer technology including "concrete" elements such as "a certificate that indicates the second [receiver] device is compliant with at least one compliance rule." *Certain Digital Video-Capable Devices and Components Thereof*, No. 337-TA-1224, 2021 WL 2375006, at *1–2 (ITC May 24, 2021).

The ALJ again rejected the § 101 challenge in the Initial Determination. The claimed invention, the ALJ ruled, is "particularized and concrete," including its "requirements for a certificate (which, as noted, has itself been construed with particularity) and compliance with a compliance rule (that is, a 'certain' rule for managing copyrighted content)." *Certain Digital Video-Capable Devices and Components Thereof*, No. 337-TA-1224, 2021 WL 6071754, at *63–64 (ITC Oct. 21, 2021). At *Alice* step one, the ALJ found "especially significant" the particularity of the claimed "threshold time requirement" (recited in the claims as the "predetermined time" and "a time between" elements), and the requirements that

"multiple specific conditions … be satisfied, including satisfaction of a threshold time requirement, before actually … 'receiving' protected content, as opposed to a single condition before 'identifying' a service's availability for some unspecified activity." *Id.* The Commission affirmed these findings and the asserted claims' patent-eligibility. *Certain Digital Video-Capable Devices and Components Thereof*, Inv. No. 337-TA-1224, 2022 WL 1302722, at *1, 2, 58 (ITC Apr. 25, 2022).[4]

## C. The District Court Holds That the Asserted Claims Are Not Patent-Eligible Under § 101

The district court initially stayed these cases pending the ITC Investigation, *MediaTek* Case, D.I. 9 (July 26, 2021), but lifted the stay shortly after completion of the ITC and PTAB proceedings. Appx46 (*MediaTek* Case, D.I. 12); *see also MediaTek* Case, D.I. 86 (Aug. 28, 2024) (Scheduling Order); *Realtek* Case, D.I. 91 (Aug. 28, 2024) (same). In February 2025, after the court resolved the parties' claim construction disputes and five months into post-*Markman* fact discovery, Realtek filed a motion for judgment on the pleadings. The asserted claims, it urged, are ineligible for patent protection under § 101. Appx1785–86.

---

[4] The Commission nonetheless found no violation of § 337, concluding that there was no infringement based on certain claim constructions the district court later declined to adopt. *Id.* at *10–16, 21–24, 29–32; *see also Certain Digital Video-Capable Devices*, 2021 WL 6071754, at *28, 29–32. Philips did not appeal because the patents would have expired during the appeal, rendering the ITC powerless to grant Philips relief on remand.

1. **<u>Realtek's Motion</u>:** Realtek's § 101 argument rested on abstracting the asserted claims by setting aside every claim limitation or element that had to do with the transmitter, or "first device." Realtek identified in <span style="color:red">red</span> the elements of the claims it contended could be ignored and then reproduced claim 1 of the '564 Patent without these elements, as shown below.

| | |
|---|---|
| 1. A second device for receiving delivery of a protected content <span style="color:red">from a first device</span>, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to: | 1. A second device for receiving delivery of a protected content …, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to: |
| [a] provide a certificate <span style="color:red">to the first device</span> prior to receiving a first signal, <span style="color:red">wherein the first signal is sent by the first device</span>, wherein the certificate is associated with the second device; | [a] provide a certificate … prior to receiving a first signal, … wherein the certificate is associated with the second device; |
| [b] receive the first signal <span style="color:red">when the certificate indicates that the second device is compliant with at least one compliance rule</span>; | [b] receive the first signal …; |
| [c] create a second signal, wherein the second signal is derived from a secret known by the second device; | [c] create a second signal, wherein the second signal is derived from a secret known by the second device; |
| [d] provide the second signal <span style="color:red">to the first device after receiving the first signal, wherein the second signal is received by the first device</span>; and | [d] provide the second signal …; and |

| [e] receive the protected content <span style="color:red">from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.</span> | [e] receive the protected content …. |
| --- | --- |
| Appx1797–98 (element labels added). | Appx1799 (element labels added, ellipses in original). |

Realtek urged that, once those elements had been excised from the claims, the claims were merely directed to (at *Alice* step one) the abstract idea of "sending and receiving data." Appx1804–10.

To support that approach, Realtek invoked the district court's claim construction ruling. At *Markman*, the court correctly recognized that, because claim 1 recites a "second device," it "is not a 'system' claim requiring a 'first device,'" and thus the term involving the "second signal" means "that the second device is capable of sending the second signal to the first device." Appx297–98 (Plaintiff's position in Joint Claim Construction Brief); *see also* Appx1518 (119:15–17) (*Markman* Hearing Transcript) ("I agree with the plaintiffs").

Realtek, however, could not dispute this Court's precedent that it is appropriate to claim a device (here, the receiver) with the capability of performing recited functions when in an environment with another, unclaimed device (here, the transmitter) in the context of a two-device protocol. *INVT SPE LLC v. U.S. Int'l*

*Trade Comm'n*, 46 F.4th 1361, 1374–75 (Fed. Cir. 2022). Thus, although the first device "is not a limitation of the claimed invention itself," its "operation affects whether the claims are met." *Id.* at 1375.

As for *Alice* step two, Realtek presented no evidence the claimed invention lacked an inventive concept. Appx1810–11 (arguing only that "nothing in the claim limitations presents a technical solution to a technical problem sufficient to confer patent eligibility"). The only evidence available at that stage of proceedings—the '564 Patent's teaching that the claimed invention improved upon the prior art including the *Brands-Chaum* computer, consistent with the decisions of this Court, the PTAB, and the ITC—demonstrated that the claimed receiver was unconventional. *See supra* §§ I, II.A, II.B.

**2.** **The District Court's Decision:** The district court granted Realtek's motion. Appx7. In the court's view, the claims are "directed to the abstract idea of authenticated content transfer and [do] not contain an additional inventive concept that transforms this abstract idea into a patent-eligible application." Appx7.

At *Alice* step one, the district court acknowledged that "inventions that improve a computer's functioning by 'improving the security' of content transfer 'can be a non-abstract computer functionality if done by a specific technique that departs from earlier approaches to solve a specific computer problem.'" Appx8–9 (quoting *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir.

2018)). But the court stated that it did "not see in the claims or the specification a sufficient explanation of 'how the elements recited in the claims refer to technological features functioning together' to improve technology in a specific way." Appx11 (quoting *Packet Intel. LLC v. Net Scout Sys., Inc.*, 965 F.3d 1299, 1310 (Fed. Cir. 2020)).

In support, the court presented a description of the claims that mentions the first (transmitter) device, but regularly omits how the second device operates with it as part of the two-device protocol:

> The #564 patent claims a device that is capable of participating in a process for authenticated content transfer.
>
> The second device's "processor circuit" is "arranged to execute" the following "instructions":
>
> [a] to "provide a certificate to the first device,"
>
> [b] "receive [a] first signal" from the first device if the certificate is compliant with a compliance rule,
>
> [c] "create a second signal … derived from a secret,"
>
> [d] "provide the second signal to the first device after receiving the first signal," and
>
> [d] "receive the protected content from the first device."

Appx9 (line breaks and element labels added).

For example, the court's analysis omitted the crucial distance-bounding element (based on the "time between sending of the first signal and the receiving of

the second signal") entirely. *Contrast* Appx38 (element 1[e]). It did not mention the patent's claimed technological improvements over the prior art, including the *Brands-Chaum* computer discussed in the specification and by this Court, the PTAB, and the ITC. *See supra* §§I, II.A, II.B.

Based on its view of the claim language, the district court held that it did not recite a patent-eligible solution to a technological problem. The court faulted the patent for not "specifically disclos[ing] how the second device is configured to receive protected content from the first device." Appx9. At the same time, it faulted the patent's specific disclosures on that very point to the extent certain elements involved "well-known methods" and use of "standards." Appx12. The court held that MCP had not shown "how the sequence, order, or combination … is nonconventional." Appx12. It never addressed how the claims' combination of using certain known cryptographic methods within a distance-bounding system improved on prior art, including the *Brands-Chaum* computer.

The district court acknowledged that this Court appeared to have upheld claims similar to the ones here in *CosmoKey*. Appx16. But the court "confess[ed]" that it was "unable to understand" why this Court had found those claims to be sufficiently "'specific' or 'technological'" to be patent-*eligible*. Appx16.

The district court's *Alice* step two analysis (Appx17–18) was similar. The "distinction between the first and second steps of the *Alice* analysis," the court stated,

"is porous to the extent that it is decipherable." Appx15–16 n.1. The court acknowledged that, in theory, it was required to "draw all reasonable inferences in favor of the non-moving party." Appx4. But it found, without citing evidence, that the claims are "broad and nonspecific" and incapable of "recit[ing] an inventive concept." Appx16–17.

## SUMMARY OF ARGUMENT

The district court's § 101 decision departs from this Court's precedents. It cannot be reconciled with this Court's and the PTAB's prior holdings that the '564 Patent and related patents are nonobvious—and *a fortiori* unconventional—over the prior art. And it departs from the ITC's prior and better reasoned determination that the '564 Patent's claims are "plainly directed to eligible subject matter." *Certain Digital Video-Capable Devices*, 2021 WL 2375006, at \*1–2. Reversal is warranted.

*First*, the asserted claims are not directed to the abstract idea of "authenticated content transfer" at *Alice* step one. The patent does not simply claim using a generic computer as a tool to perform an abstract idea, such as an already existing economic or commercial practice. The patent instead identifies specific technological problems in the prior art *Brands-Chaum* computer described in the patent's specification and prosecution history and provides new and inventive technological solutions to those problems, as previously found by this Court, the PTAB, and the ITC.

22

The recited receiver is configured for a specific type of secure authenticated distance measurement that could not be performed by prior art computers. The claimed receiver is arranged to use (1) a certificate with specific information to authenticate itself as compliant with a compliance rule and (2) a shared secret to create and return a second signal that cryptographically confirms a distance measurement is to that receiver, which enables the transmitter to determine that the authenticated, compliant receiver is nearby. This technology increases the security of the receiver because it can ensure that the authenticated receiver—and not an unauthenticated device that may undesirably copy or redistribute the content—is nearby the transmitter.

The claims are thus directed to specific improvements to computer technology. This Court has repeatedly confirmed that inventions that improve a computer's security, like those here, "can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *CosmoKey*, 15 F.4th at 1097 (quoting *Ancora*, 908 F.3d at 1348). As in *CosmoKey*, the "claims and specification [here] recite a specific improvement to authentication that increases security, prevents unauthorized access by a third party, [and] is easily implemented." *Id.* at 1098. The district court admitted to being unable to discern how the claims in *CosmoKey* were

directed to a specific technology solution. But the analysis in *CosmoKey* confirms that the claims here were anything but abstract ideas.

The district court also, without explanation, effectively excised more than half of the words from the claim 1. For example, it omitted distance-bounding from the claims entirely. It omitted how the distance-bounding calculation is done, or the requirement that a signal based on a "shared secret" be used in that determination. The district court likewise erred by disregarding innovative claim elements by deeming them purely conventional. This Court has squarely held that courts analyzing *Alice* step one cannot "read out or ignore limitations … merely because they can be found in the prior art." *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1373 (Fed. Cir. 2025). The claim elements were anything but conventional, as this Court has already recognized. At the very least, the district court improperly resolved material disputes of fact as to unconventionality against the non-moving party. The pleadings, the patent's specification, and prior decisions of this Court, the PTAB, and the ITC all established that there was at least a material dispute of fact that the asserted claims provided a specific, unconventional technological solution over the prior art.

**Second**, the district court erred in concluding that the asserted claims lack an inventive concept at *Alice* step two. Here, the claimed subject matter is not a conventional combination of conventional elements. It instead includes at least one

unconventional "inventive concept" that transforms the purportedly claimed abstract idea into patent-eligible subject matter. For example, the claims require, when determining proximity, using a signal derived from a "shared secret"; that ensures the distance is measured from the authenticated device (not an unauthenticated one that might be interposed closer in). The patent at least describes and claims a specific improvement over the then-existing *Brands-Chaum* computer. This Court and the PTAB confirmed the same when upholding validity over *Brands-Chaum* and other prior art. At a minimum, the district court erred by failing to find a genuine question of material fact as to whether the claims merely recite conventional combinations of conventional elements.

## STANDARD OF REVIEW

This Court reviews grants of judgment on the pleadings according to regional circuit law. *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984–85 (Fed. Cir. 2009). The Third Circuit reviews such judgments *de novo*, "accept[ing] all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw[ing] all reasonable inferences in favor of the non-moving party." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).

Patent eligibility under § 101 is "a question of law that may contain underlying issues of fact." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Circ. 2020). Facts pertaining to patent eligibility, including "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent," "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018). Dismissal based on § 101 is improper at the pleadings stage if the "factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine*, 906 F.3d at 1007; *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022) (collecting cases); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("[F]actual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101.").

### ARGUMENT

Determining whether a patent covers a patent-ineligible "abstract idea[ ]" under § 101 involves a two-step inquiry. *Alice*, 573 U.S. at 217. At step one, the Court must "determine whether the claims at issue are ***directed to*** a patent-ineligible … abstract idea." *Id.* at 218. "The step one 'directed to' analysis … depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020). Even if the claims are "directed to" an "abstract idea" at step one, they are

patentable at step two if the claim "elements," considered "both individually as an ordered combination," contain an "inventive concept" that "transform[s] the nature of the claim into a patent-eligible application" of that idea. *Alice*, 573 U.S. at 217.

The district court erred at both steps. At step one, the court so truncated the claims' limitations that they no longer "accurately reflected" what the claims required and the advance they reflected; it also deemed claim elements purely "conventional" without evidentiary or logical basis. At step two, the court held that the claim limitations, "whether considered individually or as an ordered combination," failed to "'transform' the claimed abstract idea [of authenticated content transfer] into patent-eligible subject matter." But the court's analysis was flawed. It did not discuss the claim elements individually or as an ordered combination; nor did it mention the claim elements *at all*.

## I. THE '564 PATENT IS "DIRECTED TO" CONCRETE IMPROVEMENTS TO TECHNOLOGY FOR SECURE TRANSFER OF PROTECTED DIGITAL CONTENT—NOT AN ABSTRACT IDEA

### A. The '564 Patent Claims a Specific Technological Solution for Securely Transferring Protected Digital Content Using Authenticated Distance Measurement

#### 1. The Asserted Claims Are Directed to a Patent-Eligible Improvement to the *Brands-Chaum* Distance-Bounding Computer

*Alice* step one requires courts to examine "what the patent asserts to be the claimed advance," *TecSec*, 978 F.3d at 1294, crediting "the written description['s]" explanation of "the technical advantages offered by" the claimed invention,

*CardioNet*, 955 F.3d at 1369; *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (considering "the specification's teachings that the claimed invention achieves other benefits over conventional databases"). This Court has repeatedly acknowledged that claims directed to "'improving [computer] security,'" "'can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem.'" *CosmoKey*, 15 F.4th at 1099 (quoting *Ancora*, 908 F.3d at 1348); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304–05 (Fed. Cir. 2018).

Here, the patent expressly teaches that the claimed invention provides a technological improvement in security over the *Brands-Chaum* computer. *Brands-Chaum* provided a mechanism for determining proximity—distance bounding. Appx1373–76; *supra* pp. 6 – 8. The patent explains that *Brands-Chaum*, however, "does not allow authenticated device compliancy testing," and that the claimed invention provides "a solution to the problem of performing a secure transfer of content within a limited distance." Appx35 (2:37–42). The Court must credit those statements—particularly at the pleading stage. *See CardioNet*, 955 F.3d at 1371; *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022).

This Court itself has described the invention as a significant advance over *Brands-Chaum*. In particular, in *Intel*, 2024 WL 725243, this Court upheld the PTAB's finding that the related '809 Patent represents a nonobvious advance in

digital content protection technology. *Id.* at *1. The patent, this Court explained, makes that advance by combining, in a nonobvious way, the "authentication protocol" with "the broad distance-measurement concept … taught in *Brands-Chaum*." *Id.*

The Court explained precisely why that was so. The *Brands-Chaum* computer relied on a series of rapid, single-bit exchanges—and how long it took them to move between the two devices—to calculate a distance between devices using the speed of light. Appx1373–76; *supra* pp. 6–8. As this Court explained, *Brands-Chaum* itself taught "that an '***essential*** element' of its distance-bounding protocol 'consists of a ***single-bit*** challenge and rapid ***single-bit*** response.' " *Intel*, 2024 WL 725243, at *1 (emphasis in original) (quoting *Brands-Chaum*, Appx1373). The evidence showed that, in the prior art, "transmitting a ***multi-bit*** message would create unwanted delays, which in turn would render the distance measurement inaccurate and impair security." *Id*. As a result, "*Brands-Chaum*'s teachings are incompatible" with "multi-bit authentication protocols." *Id.* Because ***authenticated*** device compliancy testing requires the use of multi-bit exchanges, *Brands-Chaum* could only prove that two ***anonymous*** devices were near each other. Appx35 (2:31–39).

The claims here provide a "solution" to *Brands-Chaum*'s shortcomings. Appx35 (2:40). They allow for the "***secure*** transfer of content within a limited distance," Appx35 (2:37–42), using multi-bit messages so the receiving "device can

first be tested on compliancy before a distance measurement is executed," Appx35 (2:55–60). This use of multi-bit messages is made possible because, unlike *Brands-Chaum*, the claimed invention does not require the use of the speed of light to perform distance-bounding, but instead uses a "predetermined time" protocol that is more tolerant of delays. *See supra* pp. 8–12. That is a concrete solution to a specific technological problem.

The claim limitations add further specificity. The first element involves "checking if the identification of the [receiver] is compliant with an expected identification." Appx36 (3:62–66). To perform that element, claim 1 recites that the receiver "provide[s] a certificate to the first device [the transmitter] prior to receiving a first signal," from the transmitter, where the certificate "indicates that the second device is compliant with at least one compliance rule." *E.g.*, Appx36–38 (Fig. 2, 3:62–67, 5:63–6:23, elements 1[a]–[b]). Under the stipulated claim construction, the certificate must include "at least the entity's distinguishing identifier and public key, and [be] signed by a certification authority to guard against forgery." Appx1484; *see also* Appx35–36 (2:2–7, 3:46–50, 3:62–67).

To further ensure the transaction's security, the invention requires that the transmitter and receiver "share" a cryptographic "common secret" that is also to be "used in performing the distance measurement" between the two devices. Appx35 (2:43–49). The transmitter can share the secret with the receiver after

determining that the receiver "is complaint" with the "predetermined compliance rules." Appx36(3:46–53). That sharing process can be performed securely using "key transport mechanisms" and "key agreement protocol[s]." Appx36(3:54–61).

The claim thus recites that, after the receiver has been found compliant with the compliance rule, the system performs the distance-bounding determination ***using the shared secret***. The receiver receives a "first signal" from the transmitter and then "create[s] a second signal, wherein the second signal is derived from" the shared secret (element 1[c]). The transmitter "determines [whether] the second signal is derived from the [devices' shared] secret" (element 1[e]). If so, the receiver "receive[s] protected content from the" transmitter if the "time between sending of the first signal and receiving of the second signal is less than a predetermined time" (element 1[e]). As construed, "predetermined time" means "a time interval selected to ensure that the first and second communication devices are sufficiently near one another to permit access to the protected content, where sufficiently near refers to physical proximity." Appx1484; *see also* Appx1493(19:12–20:6).

The patent teaches that the transmitter's receipt of the receiver's second signal within such a "predetermined time" enables a determination of physical proximity that can prevent unauthorized copying of licensed content, ensuring the content remains within a local network, rather than being retransmitted over the Internet. Appx35(2:16–27). And the receiver's second signal, created based on the shared

secret, provides the transmitter with information it can use to determine that the second signal—used for distance bounding—came from the receiver that has been authenticated as compliant based on its certificate, rather than an unauthenticated device that may copy or redistribute the content without authorization. Appx35–37 (2:63–3:3, 5:39–46, 6:33–38).

The claim elements thus provide a specific solution to the specific problem with the then-existing *Brands-Chaum* computer, which "d[id] not allow authenticated device compliancy testing and [was] not efficient when two devices must also authenticate each other." Appx35 (2:37–39). Contrary to the district court, this solution is not "results-oriented" (Appx18), but instead provides specific ways to achieve the invention's goals. For example, because the term "certificate" was construed as "information containing at least the entity's distinguishing identifier and public key, and signed by a certification authority to guard against forgery," the claims are not merely directed to the result of obtaining a certificate-based authentication. They do not preempt all forms of using a certificate to authenticate a receiver as compliant with a compliance rule. Similarly, the claims are not merely directed to the result of limiting the distance between the receiver and transmitter. They do not preempt other ways of distance measurement, such as using single bit messages (*Brands-Chaum*), or other ways of restricting content distribution to within a proximity, such as by restricting the number of network "hops." Appx549 (FCC

order discussing technology that "localiz[es] [] content through a limit of 3 on the Time to Live ('TTL') field in IP packets, which represents the number of routers through which an IP packet can pass before it is discarded"); Appx576–77 (same). They instead require a particular and innovative sequence of steps, requiring (for example) performing a distance-bounding determination that employs the round-trip time of a signal that is based on a shared secret—ensuring that distance measured is to an authenticated, compliant device and not a different, unauthenticated (and potentially noncompliant) one.

## 2. The Asserted Claims Represent the Type of Technological Improvement This Court Has Found Patent-Eligible at Step One

This Court has repeatedly held that claims for "[i]mproving security"— including security "against a computer's unauthorized use of a program—can be a non-abstract computer functionality if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora*, 908 F.3d at 1348. The claims here for improving digital content transfer security are likewise patent-eligible at *Alice* step one.

*Ancora*, like this case, involved patent claims for "limiting a computer's running of software not authorized for that computer to run." *Id.* at 1344. The patent there restricted the operation of software to computers that were licensed to use the software by requiring a match between a "key," which was "a unique identification code for the **computer**," and a "license record," which was "associated with a

particular *application*." *Id.* at 1345. The "innovation of the patent relate[d] to where the license record is stored in the computer." *Id.* The patent unexpectedly stored the license record in "BIOS memory," which is "typically used for storing programs that assist in the start-up of a computer, not verification structures" for determining whether software is licensed. *Id.* That method "improve[d] security … because successfully hacking BIOS memory … is much harder than hacking the memory used by the prior art to store license verification." *Id.* The Court found that was "not directed to an abstract idea" at step one because it "addresses a technological problem with computers: vulnerability of license-authorization software to hacking." *Id.* at 1348–49.

Likewise, *CosmoKey* involved a patent for an "improvement in computer verification and authentication techniques." 15 F.4th at 1097. This Court explained that "the claims and written description suggest that the focus of the claimed advance is activation of the authentication function, communication of the activation within a predetermined time, and automatic deactivation of the authentication function, such that the invention provides enhanced security and low complexity with minimal user input." *Id.* The claims included the steps of:

> (1) "as a criterion for deciding whether the authentication to the transaction shall be granted or denied, having the authentication device check whether a predetermined time relation exists between the transmission of the user identification and a response from the second communication channel";

(2) "ensuring that the authentication function is normally inactive and is activated by the user only preliminarily for the transaction"; followed by

(3) "ensuring that said response from the second communication channel includes information that the authentication function is active"; and

(4) "thereafter ensuring that the authentication function is automatically deactivated."

*Id.* (line breaks added). The claims, this Court found, provided "a specific set of ordered steps that go beyond the abstract idea" of authentication based on verification of identity. *Id.* at 1099. This Court found the claims at issue patent-eligible because the "claims and specification recite a specific improvement to authentication that increases security, prevents unauthorized access by a third party, [and] is easily implemented." *Id.* at 1098.[5]

And this Court, in *TecSec*, upheld a patent for "multi-level security of various kinds of files being transmitted in a data network" as non-abstract at step one. 978 F.3d at 1282. The patent there claimed "a method in which a digital object—*e.g.*, a document, video, or spreadsheet—is assigned a level of security that corresponds to a certain combination of access controls and encryption. The encrypted object can

---

[5] *CosmoKey* was decided at *Alice* step two, but there are "overlaps" between the steps, and this Court has previously found that whether a claim "passes muster at step one" may be assessed in light of this Court's "holdings under step two." *Ancora*, 908 F.3d at 1349. That is true with *CosmoKey* here. Indeed, in *CosmoKey*, the Court stated, without deciding the issue, that it was "not convinced" the patent was directed to an abstract idea at step one. *See* 15 F.4th at 1097.

then be embedded or 'nested' within a 'container object,'" which can also be "encrypted and access-controlled [to] provide[] a second layer of security." *Id.* The Court found the claim was not merely directed to the abstract idea of "multilevel security." *Id.* at 1295. The claim did not simply use "multiple levels of encryption," but required "accessing an 'object-oriented key manager' and specified uses of a 'label' as well as encryption." *Id.* The Court found that these features of the claims "are directed at solving a problem specific to computer data networks," namely "allowing for the simultaneous transmission of secure information to a large group of recipients connected to a decentralized network … but without [allowing] uniform access to all data by all recipients." *Id.* The Court found the claims non-abstract at step one because "the claims are directed to improving a basic function of a computer data-distribution network, namely, network security." *Id.* at 1296.

Like the claims in *Ancora*, *CosmoKey*, and *TecSec*, the claims here are not merely directed to "[i]mproving security" or providing security "against a computer's unauthorized use of" digital content. *Ancora*, 908 F.3d at 1348. Like the claims in *Ancora*, *CosmoKey*, and *TecSec*, the claims here improve security by employing "a specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora*, 908 F.3d at 1348. As explained above (at pp. 6–12, §I.A.1), the claims here overcome shortcomings of the *Brands-Chaum* computer to provide secure distance measurement before allowing a device to access

protected digital content. They do so using specific, ordered steps requiring the receiver to (1) provide a certificate showing compliance with a compliance rule and (2) alter a first signal and send a second signal based on a cryptographic "shared secret" with the transmitter, and (3) requiring the distance measurement to be based on that second signal and be performed using a "predetermined time." As a result, like the claims in *Ancora*, *CosmoKey*, and *TecSec*, the claims here are directed to "a non-abstract computer functionality" at step one. *Ancora*, 908 F.3d at 1348.

**B.    The District Court Committed Multiple Errors in Finding the Claims Directed to an Abstract Idea at Step One**

Without addressing those specifics, the district court held that the claims are "directed to the abstract idea of authenticated content transfer." Appx7. The court, however, misconstrued both the patent and this Court's § 101 precedent.

**1.    The District Court Improperly Read "First Device," "Transmitter" Elements Out of the Claims**

In a § 101 analysis, "a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO, Inc v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). Yet the district court's analysis ignored critical claim elements. Indeed, the court did not even mention the novel distance-bounding protocol when describing the claim limitations. That oversight is especially telling when dealing with a patent titled "Secure Authenticated ***Distance Measurement***." Appx29.

At Realtek's insistence, the district court truncated the claims with respect to elements performed in concert with the recited transmitter. *See* Appx1799; *supra* pp. 16–22. The court described, and only partially quoted, the claims as follows:

> The #564 patent claims a device that is capable of participating in a process for authenticated content transfer.

> The second device's "processor circuit" is "arranged to execute" the following "instructions":

> [a] to "provide a certificate to the first device,"

> [b] "receive first signal" from the first device if the certificate is compliant with a compliance rule,

> [c] "create a second signal … derived from a secret,"

> [d] "provide the second signal to the first device after receiving the first signal," and

> [e] "receive the protected content from the first device."

Appx9 (line breaks and element labels added).

That description excises at least two critical claim elements that are the focus of the '564 Patent. It mentions the receiver creating a second signal derived from a secret, but omits the transmitter's "determin[ation] that the second signal is derived from the secret" (element 1[e]), a critical component of the authentication process. It omits the distance measurement entirely, which requires a determination that the "time between the sending of the first signal and the receiving of the second signal is less than a predetermined time" (element 1[e]). Concomitantly, it omits the use of

the second signal, which is derived from the shared secret, in that distance-bounding determination. Those errors are fatal to the district court's analysis. As this Court has repeatedly held, courts cannot "ignore what plainly are important aspects of the claims and the focus of the claimed advance in the combination." *TecSec*, 978 F.3d at 1296; *see also McRO*, 837 F.3d at 1313. Yet that is precisely what the district court did.

The specification, moreover, explains the importance of those omitted elements. It discusses the value of using a shared secret as part of a time-based distance measurement: "Because the common secret is being used for performing the distance measurement," the specification explains, "it can be ensured that … it is the distance between the right devices that is being measured." Appx35 (2:50–54). In other words, using the shared secret as part of the distance-bounding ensures the invention measures the distance to the authenticated device, not some other device that is not authenticated. And "[b]y using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced." Appx36 (4:9–11); *see also* Appx37 (6:57–61) ("The time difference … can then be used for determining the physical distance between the first device and the second device.").

The specification, moreover, expressly states that this ***authenticated distance measurement*** was the patent's advance over the *Brands-Chaum* computer.

Appx35 (2:31–39). The ITC recognized that these elements rendered the claims specific and nonabstract. *Certain Digital Video-Capable Devices*, 2021 WL 2375006, at *1–2; *Certain Digital Video-Capable Devices*, 2021 WL 6071754, at *63–64. The PTAB and this Court recognized the invention's nonobvious advance over the prior art. *See supra* pp. 13–14. But the district court considered neither the authentication using the second signal and shared secret nor the distance measurement elements of the claims. Its step one analysis cannot be sustained.

The district court provided no explanation for excising elements from the claims. Realtek, however, had urged that, because "[c]laim 1 is not a 'system' claim requiring a 'first device,'" Appx297–98 (Joint Claim Construction Brief), all functions identified as performed by the transmitter could be ignored in the § 101 analysis. *See* Appx1804–10. But the district court never adopted that rationale, and it cannot be sustained regardless. This Court has recognized that it is appropriate to claim a device (here, the receiver) with the capability of performing recited functions in an environment with another, unclaimed device (here, the transmitter) in the context of a two-device protocol. *INVT*, 46 F.4th at 1374–75. In such a claim, although the first device "is not a limitation of the claimed invention itself," its "operation affects whether the claims are met." *Id.* at 1375.

Here, each of the elements the district court ignored is properly part of the claims, because the claimed receiver must be capable of performing each of the

recited functions when in an environment with a transmitter that performs its portion of the defined two-device secure authentication distance-measurement protocol. As a result, the recited interactions between the transmitter and receiver are plainly relevant when determining whether the claims recite a "patent-eligible … improvement[ ]" to "computer technology." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). The district court had no warrant to ignore claim elements reciting the claimed receiver's arrangements to interact with the transmitter.

### 2. The District Court's Analysis of the Claim Limitations Defies Both Precedent and the Patent's Disclosures

After giving its revised description of the claims, the district court faulted "the patent" for failing to "further describe[ ] the 'processor circuit,' its 'arrangement,' the 'instructions,' the 'certificate associated with the second device,' the 'secret known to the devices,' or the 'signals.'" Appx9. The court stated that it "[did] not see in the claims or the specification a sufficient explanation of 'how the elements recited in the claims refer to technological features functioning together' to improve technology in a specific way." Appx11 (quoting *Packet Intell.*, 965 F.3d at 1310). The court's analysis piled error upon error.

For one thing, "the claims do not simply recite, without more, the mere desired result" of performing secure distance measurement. *Koninklijke*, 942 F.3d at 1151. As explained in detail above, the claims recite specific, ordered steps requiring the

41

receiver to (1) provide a certificate showing compliance with a compliance rule, and (2) create and send a second signal based on a cryptographic "shared secret" with the transmitter. Doing so allows the transmitter to ensure authentication and that the distance measurement is performed with an authenticated device, rather than a device that is not authorized to access the protected content. *See supra* pp. 8–12, §I.A.1. The claims also recite (3) a novel distance-measurement protocol using a "predetermined time" that makes use of those multi-bit authentication messages possible. *See id*. The claim language itself thus "recite[s] a sufficiently specific implementation" of secure distance measurement to render the claims non-abstract at step one. *Koninklijke*, 942 F.3d at 1151. In contrast with the district court, the ITC recognized that these elements rendered the claims specific and nonabstract. *Certain Digital Video-Capable Devices*, 2021 WL 2375006, at *1–2; *Certain Digital Video-Capable Devices*, 2021 WL 6071754, at *63–64. The PTAB and this Court have recognized that they rendered the invention a nonobvious advance over prior art. *See supra* pp.13–14.

The district court demanded more. It asked, for example, "where the patent specifically discloses how the second device is configured to receive protected content from the first device," Appx9, and "where the patent discloses how the device is capable of 'generating data according to this common secret,'" Appx10. The court further stated that "the patent" does not describe "the 'certificate

42

associated with the second device.'" Appx9. But once the patent has described specific, concrete elements for performing the invention, any further question of whether the patent sufficiently discloses how to ***implement*** those claim elements— whether it teaches skilled artisans precisely how to "make and use" the invention— is a question of enablement under § 112, not abstraction under § 101.

In any event, the patent ***does*** disclose how to implement all of its elements. It discloses that "[t]he authentication and exchange of secret could be performed using the protocols described in some known ISO standards *e.g.* ISO 9798 and ISO 11770." Appx37(5:63–65). It then provides a specific "example" of how "the first device could authenticate the second device" for sharing the secret:

> First device→Second device: $R_B$||Text 1
> where $R_B$ is a random number
>     Second device→First device: CertA||TokenAB
> Where CertA is a certificate of A
>     TokenAB=$R_A$||$R_B$||B||Text3||s$S_A$($R_A$||$R_B$||B||Text2)
>     $R_A$ is a random number
>     Indentifier B is an option
>     s$S_A$ is a signature set by A using private key $S_A$
>     If TokenAB is replaced with the token as specified in
> ISO 11770-3 we at the same time can do secret key
> exchange. We can use this by substituting Text2 by:
>     Text2:=e$P_B$(A||K||Text2)||Text3
> Where e$P_B$ is encrypted with Public key B
>     A is identifier of A
>     K is a secret to be exchanged

Appx37(5:65–6:15). The patent likewise discloses that the "signal could be modified by XORing the chips … of the direct sequence code of the bits of the

secret." Appx37(5:57–61). As for the certificate, the claims require that it (1) be received before the transmitter issues a first signal; (2) be "associated with the second device"; and (3) "indicate[] that the second device is compliant with at least one compliance rule" (elements 1[a]–[b]). The stipulated construction further defines the "certificate" as "information containing at least the entity's distinguishing identifier and public key, and signed by a certification authority to guard against forgery." Appx1484. The district court's view that the patent does not disclose how the recited claim elements function as a technological matter, Appx11, is unfounded.

Indeed, despite stating that the patent failed to disclose how to perform the claim elements as a technological matter, the district court ultimately admitted that the opposite was true. Appx11–12. In the court's view, however, those disclosures did not count—and the corresponding claim elements thus could be disregarded— because they "incorporate well-known methods, conventional computer components, and ISO standards." Appx12. That reasoning violates a basic tenet of § 101 law: A court is not free to "ignore limitations" in the claims "merely because they can be found in the prior art." *PowerBlock*, 146 F.4th at 1373; *see also Berkheimer*, 881 F.3d at 1369 ("Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. … The mere fact that something is disclosed in a piece of prior art, for example,

does not mean it was well-understood, routine, and conventional."). It has long been settled that it is "inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the [§ 101] analysis." *Diamond v. Diehr*, 450 U.S. 175, 188 (1981). Yet that is precisely what the district court did.

The district court's reasoning also fails on its own terms, because the court misapprehended what was known in the art. The court found individual claim elements to be conventional when they were not, in fact, conventional.[6] More important, the court clearly erred in failing to appreciate "the focus of the claimed advance *in the combination*." *TecSec*, 978 F.3d at 1296. The court never made a finding that the combination of elements in the claims was generic and conventional. It cited no evidence that anyone had ever performed secure distance measurement using the elements claimed in the '564 Patent. It did not suggest, and could not suggest, that it was conventional to use a multi-bit, secret-based signal to ensure the measurement was addressing the proximity of an authenticated device. Instead, the court merely stated that the patent "***does not say*** how the sequence, order, or

---

[6] For example, the court cited MCP's counsel's statement that the receiver could generate a second signal using the common secret "'by XORing the chips,'" and stated that counsel "later acknowledged that XOR operations are known in the art and are, in fact, conventional." Appx11. While counsel acknowledged that XOR operations were known, he repeatedly emphasized that the XOR operation used by the patent—to generate a second signal by modifying a first signal using a secret to authenticate a distance measurement—was not known and was not conventional. *See, e.g.*, Appx1861–63 (32:7–13, 36:14–37:5).

combination of the generic methods, components, and standards is nonconventional." Appx12.

No law requires that the specification say, "here is why the claims are unconventional" for the claims to be found non-abstract under § 101. Yet the patent here does just that. As explained above, the patent explains that the then-state-of-the-art *Brands-Chaum* distance-bounding computer "does not allow authenticated device compliancy testing and is not efficient when two devices must also authenticate each other." Appx35 (2:37–39). The patent also explains that it provides "a solution to the problem of performing a secure transfer of content within a limited distance" through claim elements that require a certificate indicating compliance with a compliance rule and sending a second signal that has been modified using a shared secret. Appx35 (2:40–42); *see supra* pp. 8–13, § I.A.1. The court was required to accept those statements as true at the pleading stage. *Cellspin*, 927 F.3d at 1314. Its conclusion that the patent "does not say" how the "combination of" claims elements "is nonconventional," Appx12, is clearly erroneous. And, as noted above (at pp. 13–14), this Court's decision upholding the related '809 Patent against an obviousness challenge confirms that the '564 Patent's combination of authentication protocols with a distance-bounding protocol is nonconventional. *Intel*, 2024 WL 725243, at *1.

There is "no basis, at the pleadings stage, to say that these claimed techniques … were well-known or conventional as a matter of law." *Cellspin*, 927 F.3d at 1318. The court provided no evidence—zero—suggesting otherwise.

### 3. The District Court Misapplied This Court's § 101 Precedent

The district court's reliance on its understanding of this Court's precedents, such as *Universal Secure Registry* and *Prism Technologies*, further undermines its decision. The asserted claims are not remotely "analogous" to the claims the Court "found to be invalid under § 101" in those cases. Appx13–14.

In *Universal Secure Registry LLC v. Apple Inc.*, this Court found the challenged claims abstract because they "generically provide[d] for the collection of biometric information to generate a first authentication information, and then authenticating a user using both the biometric-information-derived first authentication and a second authentication information," which "[t]he specification … disclose[d] … [wa]s conventional." 10 F.4th 1342, 1354 (Fed. Cir. 2021). The Court thus concluded that "[t]he claims … were simply directed to combining these long-standing, well-known authentication techniques to achieve the expected result of increased security no greater than the sum of the security provided by each technique alone." *CosmoKey*, 15 F.4th at 1096 (explaining and distinguishing *Universal Secure Registry*).

Similarly, in *Prism Technologies LLC v. T-Mobile USA, Inc.*, this Court found the challenged claims were "directed to the abstract idea of 'providing restricted access to resources'" because the claims "merely recited 'receiving' a user identify, 'authenticating' the user identify, 'authorizing' the user, and 'permitting access' to the user," and did not cover a "concrete, specific solution." 696 F. App'x 1014, 1016–17 (Fed. Cir. 2017).

The district court did not meaningfully compare the specific limitations here with the claims in *Universal Secure Registry* and *Prism Technologies*. *See* Appx13–14. Instead, it found the claims analogous based on its view that "the #564 patent similarly provides no description of a specific technical solution by which the second device is arranged to receive protected information from the first device." Appx13. That fails for all the reasons above: The claims here do provide specific, concrete steps for performing authenticated distance measurement. *See supra* pp. 8–12, §I.A.1. The district court's contrary assertion improperly disregards both the claims' specific requirements and the benefits they achieve, either because they were performed to an extent by the transmitter or because the court erroneously deemed them irrelevant given their supposed basis in the prior art. And it largely ignores specific improvements over the prior art *Brands-Chaum* computer that *Brands-Chaum* teaches against. *See supra* pp. 16–22, §§I.B.1–I.B.2.

The district court's effort to distinguish cases like *Ancora*, *TecSec*, and others fails for precisely the same reasons: The district court erroneously thought that, unlike the patents in those cases, the claims here do not "offer[] specific technical improvements to computer security." Appx14. As explained above (at pp. 8–12, §I.A.1), the claims offer technical improvements to computer security that are just as concrete and specific as in those cases.

Ultimately, the district court acknowledged that it was unable to discern the line between patent-eligible and patent-ineligible subject matter under this Court's precedent. The district court "confess[ed]" that it was "unable to understand" how either the problem or the solution held patent-eligible in *CosmoKey*, Appx16— comparable to the claims here—is "more 'specific' or 'technological' than those" found ineligible in *Universal Secure Registry*. Appx16. That professed inability "to understand" what constitutes a patent-eligible technological improvement tainted the district court's entire step one analysis. Reversal is warranted.

## II.    THE ASSERTED CLAIMS CONTAIN AN "INVENTIVE CONCEPT" THAT REPRESENTS A PATENTABLE ADVANCE OVER THE PRIOR ART UNDER *ALICE* STEP TWO

Because the asserted claims are not directed to an abstract idea at *Alice* step one, this Court need go no further; the claims should be upheld. *See Enfish*, 822 F.3d at 1339. But even if the claims were deemed directed to the "abstract idea of authenticated content transfer" at step one, Appx7, they are patent-eligible at step

two. The "elements" of the claims, considered "both individually as an ordered combination," contain multiple "inventive concept[s]" that "transform the nature of the claim[s] into a patent-eligible application" of authenticated content transfer. *Alice*, 573 U.S. at 217.

### A. The Asserted Claims Recite a Specific, Inventive Solution to Authenticated Content Transfer, Whether the Elements Are Considered Individually or in Combination

As the specification explains, the patent here contains inventive concepts. Contrary to prior-art teachings, it "combines a distance measurement protocol with an authentication protocol" to offer a "solution to the problem of performing **secure** transfer of content within a limited distance." Appx35 (2:40–42, 2:55–56). As the patent further explains, and as this Court's prior decision affirms, the claims define an advance over the then-state-of-the-art *Brands-Chaum* distance-bounding computer. *See* Appx35 (2:31–39).

The claims recite "more than [the] mere result" of performing authenticated content transfer using a distance-measurement protocol and an authentication protocol. *Finjan*, 879 F.3d at 1305. And they provide more than merely an instruction to combine the two. The "highly granular" set of steps recited in the claims describe a specific, concrete methodology, not a mere abstraction. *Id.* at 1304. The claims are patent-eligible under § 101.

### 1. The Receiver's Authentication With a Certificate Indicating Compliance With a Compliance Rule (Claim Elements 1[a]–[b]) Was Inventive

Claim elements 1[a]–[b] require that the receiver provide a certificate to the transmitter to authenticate itself as a device that is authorized to receive protected content. *See supra* pp. 8–12, § I.A.1. The claims then require that the receiver does so at a specific time, in a specific way.

The claims require that the receiver, at the outset, "provide a certificate to the first device [the transmitter] prior to receiving a first signal" from the transmitter, where the certificate "indicates that the second device is compliant with at least one compliance rule." *E.g.*, Appx36–38 (Fig. 2, 3:62–67, 5:63–6:23, elements 1[a]–[b]). Under the stipulated claim construction, the claimed certificate is subject to particular requirements: It must include "at least the entity's distinguishing identifier and public key, and [be] signed by a certification authority to guard against forgery." Appx1484; *see also* Appx35–36 (2:2–7, 3:46–50, 3:62–67). The use of the specific certificate enables the transmitter to ensure that the receiver "really is the device that it should be." Appx36 (3:62–66).

The claimed use of a certificate for authentication was unconventional in and of itself. *See, e.g.*, *Certain Digital Video-Capable Devices*, 2021 WL 6071754, at *71, 74–75 (finding the claimed certificate-based authentication elements nonobvious). While the patent discloses that authentication "could be performed

51

using the protocols described in some known ISO standards *e.g.* ISO 9798 and ISO 11770," Appx37(5:63–65), there is no evidence that these standards related to any compliancy determination (they do not).

Moreover, the patent explains that the then-existing *Brands-Chaum* distance-bounding computer "does not allow authenticated device compliancy testing." Appx35(2:37–38); *see also Intel*, 2024 WL 725243, at *1. As discussed above, *Brands-Chaum* relied on a series of rapid single-bit exchanges to calculate a distance between devices. *See supra* pp.6–8; Appx1373–76. That did not allow for an authenticated distance measurement to a compliant device, which would require multi-bit exchanges. *Id. Brands-Chaum* thus could only prove that two ***anonymous*** devices were near each other. The invention here solved that problem by first authenticating the receiver as compliant, which enables the creation of a secure channel for sharing the multi-bit first and second signals and secret necessary for a secure, authenticated distance measurement. Appx35–37(2:56–60, 3:54–61, 5:28–38). The claimed use of the certificate itself thus represents a patent-eligible "inventive concept." *Alice*, 573 U.S. at 217.

## 2. The Receiver's Creation of a Second Signal Based on a Shared Secret to Enable Authenticated Distance Assessment (Claim Elements 1[b]–[e]) Was Inventive

After the receiver has provided a certificate proving it is compliant with a compliance rule, the claims require yet another layer of authentication using a

cryptographic "shared secret" to ensure the distance measurement is performed *vis-à-vis* an authenticated receiver, rather than another device. *See supra* pp. 8–12, § I.A.1. And the claims perform the distance measurement in a way different from the *Brands-Chaum* computer that makes the multi-bit authentication protocols possible. *See supra* pp. 8–12, § I.A.1.

Claim elements 1[b]–[e] recite that, after the receiver has been found compliant with the compliance rule, the system performs the distance-measurement determination using a shared secret. The receiver receives a "first signal" from the transmitter, and then "create[s] a second signal, wherein the second signal is derived from" the shared secret (elements 1[c]–[d]). The transmitter "determines [whether] the second signal is derived from the [devices' shared] secret" (element 1[d]). If so, the receiver "receive[s] protected content from the" transmitter if the "time between sending of the first signal and receiving of the second signal is less than a predetermined time" (element 1[e]). As construed, "predetermined time" means "a time interval selected to ensure that the first and second communication devices are sufficiently near one another to permit access to the protected content, where sufficiently near refers to physical proximity." Appx1484; *see also* Appx1493 (19:12–20:6). The patent teaches that the transmitter's receipt of the receiver's second signal within such a "predetermined time" enables a determination of physical proximity that can prevent unauthorized copying of licensed content by

ensuring that the content remains within a local network, rather than being retransmitted over the Internet. Appx35 (2:16–27).

As discussed above (at § I.B.2), the specification teaches that modification of signals could be made according to known techniques. Appx36 (3:36–42). But nothing in the record suggests that it was conventional to perform such operations in connection with a distance measurement to confirm the distance is being measured to the appropriate, authenticated device. To the contrary, these elements were unconventional over the then-existing *Brands-Chaum* computer (*see supra* pp. 8–12, § I.A.1), which relied on a series of rapid single-bit exchanges to calculate a distance between devices using the speed of light. *See* Appx1373–76. The specification thus teaches that *Brands-Chaum* could not perform an ***authenticated*** proximity determination, which required the use of multi-bit exchanges. Appx35 (2:31–60); *see also supra* pp. 6–12, § I.A.1 (explaining the technological improvement over the *Brands-Chaum* computer).

Moreover, as this Court and the PTAB confirmed, *Brands-Chaum* could not be modified to perform an authenticated proximity determination because the modifications necessary for such a determination—*e.g.*, using a multi-bit return signal created based on a secret—"would create unwanted delays, which in turn would render the distance measurement inaccurate and impair security." *Intel*, 2024 WL 725243, at *1. And *Brands-Chaum* certainly did not disclose using a signal that

was based on a "shared secret" when conducting a proximity determination. That ensures the distance to the authenticated device, not some other device, is measured. But it requires multi-bit exchanges that *Brands-Chaum* warns against. *See supra* pp. 6–13.

The claimed use of a "predetermined time" for physical proximity determination—*i.e.*, "a time interval selected to ensure that the first and second communication devices are sufficiently near one another to permit access to the protected content, where sufficiently near refers to physical proximity," Appx1484—was also unconventional. Appx35–38 (2:61–3:20, 4:1–11, 5:39–50, 6:52–60, element 1[e]). Indeed, it is the use of the "predetermined time" to perform the distance measurement, rather than requiring the use of the speed of light as in *Brands-Chaum*, that makes the use of the claimed multi-bit authentication protocols—the certificate and the modified second signal—possible. *See supra* pp. 8–12, § I.A.1.

Additional record evidence confirms that the comparison of round-trip time (or "RTT") to a "predetermined time," to decide whether a "receiving device is 'close enough' to the transmitting device," was unconventional. The main participants in the digital content protection industry—including Intel, Warner Brothers, Sony, and Toshiba—did not purport to discover the use of such a "predetermined time" until after the patent's 2002 priority date. For example, when

promoting its later Digital Transmission Content Protection over Internet Protocol ("DTCP-IP") content protection system, Intel admitted it did not "work out" this "localization problem" until 2004. Appx520; *see also* Appx525–26 (2004 submission to FCC promoting DTCP-IP's ability to prevent "[r]edistribution to the public via the Internet (*i.e.*, outside home and personal networks)" and to "thwart or frustrate attempts to send DTCP-protected content to noncompliant devices"); Appx577 (2004 FCC Order confirming that DTCP-IP's use of an RTT "adequately restrict[s] the scope of redistribution"). Each of Warner Brothers, Sony, and Toshiba likewise described the use of such a predetermined time as inventive in their later patent filings. Appx534–36 (Warner Brothers patent describing use of RTT to confirm a "receiving device is 'close enough' to the transmitting device [to be] authorized to decode/store/playback a specified amount of content"); Appx537–38 (Sony patent describing comparing RTT to predetermined time to permit exchange of content); Appx541–43 (Toshiba patent describing comparing RTT to "predetermined value" to determine whether to allow transmission of protected audio-visual data).

As explained above, this Court and the PTAB found these elements nonobvious. *See Intel*, 2022 WL 1617415, at *7–11 (PTAB finding parallel elements of the '809 Patent nonobvious); *Intel*, 2022 WL 1618012, at *7–11 (same); *Intel*, 2024 WL 725243, at *1 (affirming PTAB's decisions); *TCL Indus. Holdings Co. v.*

*Koninklijke Philips N.V.*, IPR2021-00497, Paper 10, at 17–20 (PTAB Aug. 17, 2021) (upholding '564 Patent's validity because petitioner failed to demonstrate obviousness to combine a certificate for validation with a proximity determination) (Appx420–23); *see also* Appx412–15, Appx416–19, and Appx424–27 (same regarding '977 Patent). That raises at least a dispute of material fact as to whether these elements provide an inventive concept.

### 3.    The Ordered Combination of Claim Elements Was Inventive

Even if each of the individual foregoing techniques were conventional—and they are not—the specific ordered combination here provides an inventive concept. "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *See BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016). The specification emphasizes that the ordered "combin[ation of] a distance bounding protocol with an authentication protocol" solves the problem of prior distance-bounding protocols—that they do "not allow authenticated device compliancy testing" and are not "efficient when two devices must also authenticate each other." Appx35 (2:37–39, 2:55–56).[7] Those statements must be accepted as true at the pleading stage. *Cellspin*, 927 F.3d at 1318.

---

[7] *See also* Appx1135 (94:8–12) (inventor confirming he had "the idea of combining [a secure authenticated channel] between two entities and [a] technique to measure geographical distance between two entities"); Appx1148 (88:7–15) (inventor

The specification teaches that a receiver first authenticating itself as compliant with a compliance rule enables the establishment of a secure channel between the receiver, and a shared secret can then be used to perform an authenticated distance measurement. For example, the patent explains that the "method combines a distance measurement protocol with an authentication protocol." Appx35(2:55–56). "This enables authenticated device compliancy testing and is efficient, because a secure channel is anyhow needed to enable secure communication between devices and a device can first be tested on compliancy before a distance measurement is executed." Appx35(2:56–60). The specification further teaches how each of these techniques can be performed, *e.g.*, Appx37(5:22–6:60), and the ITC found that these techniques are nonabstract and claimed with particularity, *Certain Digital Video-Capable Devices*, 2021 WL 6071754, at *63–64.

The patent's prosecution history further establishes unconventionality. The prosecution history cites and discusses a prior art cryptography protocol for content protection called High-bandwidth Digital Content Protection version 1.0 ("HDCP 1.0"). Appx30. HDCP 1.0 was designed by major companies, including Intel, shortly before the patent's priority date. Appx488–89(¶¶99–100); Appx717–

confirming that "the idea [he] came up with … combine[d] two things. … The first one being a distance measurement protocol and the other one being an authentication protocol ….").

75; Appx776–829. HDCP 1.0 was state-of-the-art as of its release and did ***not*** include the claimed invention here—a receiver that: (1) provides a certificate to authenticate the receiver as compliant with a compliance rule and (2) creates a second signal using a shared secret to confirm that the distance measurement is to that nearby authenticated, compliant receiver. *Id*. It was not until the introduction of HDCP 2, approximately six years ***after*** the patent's priority date, that the industry included these patented improvements in the communication protocol.

In *CosmoKey* this Court found that, "[r]ead in context, the [intrinsic record] makes clear that the claimed steps were developed by the inventors, are not admitted prior art, and yield certain advantages over the described prior art." 15 F.4th at 1099. Likewise, the intrinsic record here makes clear that the patentee developed the specific combination of certificate-based authentication with an authenticated proximity determination, that these elements were not conventional, and that they provided a technical improvement over previous, conventional distance-bounding protocols. The claims demonstrate an inventive concept; they are hardly a mere "abstract idea."

## B. The District Court's Perfunctory Step Two Analysis Cannot Be Sustained

The district court held that the claims "do[] not contain additional limitations, whether considered individually or as an ordered combination, that 'transform' the claimed abstract idea [of authenticated content transfer] into patent-eligible subject

matter." Appx17. The court's step two analysis, spanning less than two pages, cannot be sustained. The court did not discuss the claim elements individually or as an ordered combination; nor did it mention the claim elements *at all*. *See* Appx17–18.

The district court essentially repeated its conclusions from step one, consistent with its view that "the distinction between the first and second steps of the *Alice* analysis is porous to the extent that it is decipherable." Appx15–16 n.1. The court found that the claims are "results-oriented," and "describe[] a desirable outcome but do[] not offer a way to achieve this result." Appx18. But the court never discussed all the claim limitations describing the "specific steps … that accomplish the desired result." *Finjan*, 879 F.3d at 1305. The court's conclusory assertion fails at step two for all the same reasons it failed at step one. *See supra* §I.B.

The district court also found that the asserted claims "do not recite an inventive concept," because they supposedly "combine nonspecific, conventional authentication techniques in a non-inventive way." Appx18. But that is a question of fact. *Berkheimer*, 881 F.3d at 1368–69. And the court cited no evidence—none— when resolving that fact question. It offered no reason for rejecting the specification's explanation that the invention improved upon the prior art *Brands-Chaum* computer, Appx35 (2:31–42), which the court was required to accept as true at the pleading stage. *Cellspin*, 927 F.3d at 1318. Nor did it address any of the other evidence discussed above showing that at least (1) the certificate-based

authentication of elements 1[a]–[b], (2) the proximity determination using the round-trip time of signals modified by a shared secret of elements 1[b]–[e], and (3) the ordered combination of (1) and (2), were not conventional and contain an inventive concept. *See supra* pp. 8–12, § I.A.1.

At a minimum, there was a genuine and material factual dispute on whether "the individual claim limitations" or "the ordered combination of limitations" constitutes an "inventive concept." *BASCOM*, 827 F.3d at 1349. Judgment on the pleadings at *Alice* step two is inappropriate where, as here, "factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine*, 906 F.3d at 1007; *Coop. Ent.*, 50 F.4th at 130 (collecting cases); *Cellspin*, 927 F.3d at 1318.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

Respectfully submitted,

Dated: February 9, 2026

/s/ Peter F. Snell
Peter F. Snell
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY & POPEO, P.C.
919 Third Avenue
New York, NY 10022
(212) 935-3000
PFSnell@mintz.com

Michael T. Renaud
William A. Meunier
Timothy J. Rousseau
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY & POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
MTRenaud@mintz.com
WAMeunier@mintz.com
TJRousseau@mintz.com

*Counsel for Appellant*
*Media Content Protection LLC*

# ADDENDUM

# TABLE OF CONTENTS

| Description | Page |
|---|---|
| Memorandum Opinion [Regarding Realtek's Motion for Judgment on the Pleading Pursuant to Fed. R. Civ. P. 12(c)], *Realtek* Case, D.I. 211 (July 28, 2025) | Appx1 |
| Order [Granting Realtek's Motion for Judgment on the Pleading Pursuant to Fed. R. Civ. P. 12(c)], *Realtek* Case, D.I. 212 (July 28, 2025) | Appx20 |
| Stipulation and Order Regarding the Court's Ruling on a Motion for Judgment on the Pleadings of Patent Ineligibility in a Related Case, *MediaTek* Case, D.I. 198 (Aug. 4, 2025) | Appx21 |
| Order [Entering Judgment on the Pleadings], *MediaTek* Case, D.I. 199 (Aug. 4, 2025) | Appx24 |
| Final Judgment, *Realtek* Case, D.I. 214 (Aug 11, 2025) | Appx25 |
| Final Judgment, *MediaTek* Case, D.I. 202 (Aug. 15, 2025) | Appx27 |
| U.S. Patent No. 10,298,564 | Appx29 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MEDIA CONTENT
PROTECTION LLC,

                  Plaintiff,

        v.

REALTEK SEMICONDUCTOR
CORP.,

                  Defendant.

Civil Action No. 20-1247-CFC

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, Delaware;
Michael T. Renaud, Adam S. Rizk, Catherine C. Xu, Timothy J. Rousseau,
Courtney P. Herndon, Williams S. Dixon, and Tianyi Tan, MINTZ, LEVIN,
COHN, FERRIS, GLOVSKY & POPEO P.C., Boston, Massachusetts

        *Counsel for Plaintiff*

John G. Day, ASHBY & GEDDES, Wilmington, Delaware; Sten A. Jensen and
Christopher J. Higgins, ORRICK, HERRINGTON & SUTCLIFFE LLP,
Washington, D.C.

        *Counsel for Defendant*

**MEMORANDUM OPINION**

July 28, 2025
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Media Content Protection LLC (Media Content) has sued

Defendant Realtek Semiconductor Corp. (Realtek) for infringement of U.S. Patent

No. 10,298,564 (the #564 patent). D.I. 99. Pending before me is Realtek's motion

pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.

D.I. 144. Realtek argues that it is entitled to a judgment in its favor because the

#564 patent is invalid under 35 U.S.C. § 101 for failing to claim patentable subject

matter.

## I.    BACKGROUND

The #564 patent is titled "Secure Authenticated Distance Measurement."

According to Media Content:

> The [#]564 Patent's "invention [ . . . ] relates to a method
> of determining whether data stored on a first
> communication device are to be accessed by a second
> communication device." It does this via a
> communication method "wherein the first and the second
> communication device share a common secret and the
> common secret is used for performing the distance
> measurement between the first and the second
> communication device."

D.I. 158 at 4 (quoting the #564 patent, Abstract). As best I can understand, the

"[i]t" that begins the second sentence refers to "a method of determining whether

data stored on a first communication device are to be accessed by a second

communication device"; the "a communication method" in that sentence, even though it uses the indefinite article, is the *same* method referred to in the first sentence; and the "does this via" phrase in the second sentence is meant to convey that the "method" that the patent "relates to" is "perform[ed]" when "the first and the second communication device share a common secret and the common secret is used for performing the distance measurement between the first and the second communication device." At oral argument, Media Content stated that the #564 patent is "directed to the receiver side" (i.e., the second device) of a "protocol for secure authenticated distance measurement" in which there is a transmitter (i.e., the first device) and receiver side. 7.8.25 Hearing Tr. (docketed as D.I. 210) 23:18–23.

Claim 1 of the #564 patent reads:

> A second device for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:
>
>> provide a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;
>>
>> receive the first signal when the certificate indicates that the second device is compliant with at least one compliance rule;
>>
>> create a second signal, wherein the second signal is derived from a secret known by the second device;

2

> provide the second signal to the first device after
> receiving the first signal, wherein the second signal
> is received by the first device; and
>
> receive the protected content from the first device
> when the first device determines that the second
> signal is derived from the secret and a time
> between the sending of the first signal and the
> receiving of the second signal is less than a
> predetermined time.

#564 patent at claim 1.

Realtek argues that claim 1 is sufficiently similar to the #564 patent's other claims to be deemed a representative claim for determining whether the patent claims patent-eligible subject matter. *See* D.I. 145 at 8–9. Media Content states on the last page of its brief and without any elaboration that the patent's "dependent claims . . . each add more to the ordered combination of claim elements, and therefore support eligibility." D.I. 158 at 20. This conclusory statement provides no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," and therefore I will treat claim 1 as representative. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Int'l*

3

*Bus. Machines Corp. v. Groupon, Inc.*, 289 F. Supp. 3d 596, 600 (D. Del. 2017) (citations omitted). "A motion for judgment on the pleadings should be granted if the movant establishes that there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (internal quotation marks and citations omitted). "In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.* at 417–18 (citation omitted).

### B.    Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

There are three judicially-created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions to patentable subject matter arise from the concern that the "[m]onopolization" of "the[se] basic tools of scientific

4

and technological work" "might tend to impede innovation more than it would tend to promote it." *Id.* (internal quotation marks and citations omitted). Abstract ideas include mathematical formulas and calculations. *Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972).

"[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept." *Alice*, 573 U.S. at 217. "Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (internal quotation marks, alterations, and citations omitted). But "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such a law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012) (emphasis removed).

In *Alice*, the Supreme Court made clear that the framework laid out in *Mayo* for determining if a patent claims eligible subject matter involves two steps. The court must first determine whether the patent's claims are directed to a patent-ineligible concept—i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Alice*, 573 U.S. at 217. If the answer to this question is no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the court must proceed to step two, where it considers "the elements of each claim both individually and as an ordered

5

combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (internal quotations and citations omitted). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Issued patents are presumed to be valid, but this presumption is rebuttable. *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 96 (2011). Subject-matter eligibility is a matter of law, but the party challenging a patent's validity must show underlying facts by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368.

## III. DISCUSSION

I agree with Realtek that the #564 patent is invalid under § 101 because it is directed to the abstract idea of authenticated content transfer and it does not contain an additional inventive concept that transforms this abstract idea into a patent-eligible application.

### A. *Alice* Step One—Whether the Claims Are Directed to Patent-Ineligible Subject Matter

According to Media Content, the claims of the #564 patent are directed to "combining an authenticated distance measurement with a certificate-based authentication protocol." 7.8 Tr. 25:21–23.

6

The first step in the *Alice* inquiry in cases involving computer technology is to ask whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (citation omitted). Content transfer, even if based on meeting a condition, is an abstract idea and not an improvement to computer functionality. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) ("providing information . . . based on meeting a condition," specifically, the "user's location," is an abstract idea); *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("customizing [and providing] information based on (1) information known about the user and (2) navigation data" is an abstract idea). "Controlling access to resources" is an abstract idea that "is pervasive in human activity, whether in libraries (loaning materials only to card-holding members), office buildings (allowing certain employees entrance to only certain floors), or banks (offering or denying loans to applicants based on suitability and intended use)." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). But inventions that improve a computer's functioning by "improving [the] security" of content transfer "can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier

7

approaches to solve a specific computer problem." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018). Thus, "[i]n cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021).

The #564 patent claims a device that is capable of participating in a process for authenticated content transfer. The second device's "processor circuit" is "arranged to execute" the following "instructions": to "provide a certificate to the first device," "receive [a] first signal" from the first device if the certificate is compliant with a compliance rule, "create a second signal . . . derived from a secret," "provide the second signal to the first device after receiving the first signal," and "receive the protected content from the first device." #564 patent, claim 1.

Neither the patent nor Media Content further describes the "processor circuit," its "arrangement," the "instructions," the "certificate associated with the second device," the "secret known to the devices," or the "signals." At oral argument, I repeatedly asked Media Content to direct me to where the patent specifically discloses how the second device is configured to receive protected content from the first device. 7.8 Tr. 21:4–8; 21:13–16; 21:18–22:1; 27:5–6; 28:2–

5, 28:19 –20, 28:23–34. Media Content first pointed me to the bottom of column 6 of the specification.

> [COUNSEL]: [Column 6] describes a communication
> device for performing authenticated distance
> measurement. And on -- just to jump ahead. It describes
> this communication device could be placed inside
> devices such as a DVD, a computer, a CD, a CD
> recorder, a television, and other devices for accessing
> protected content. So devices such as a television are
> receivers. So this describes a receiver.
>
> THE COURT: So that's just like generic, the effective,
> like, generic components, you know, you buy off the
> shelf.
>
> [COUNSEL]: Yes. So, Your Honor, it has a receiver and
> it has a processor, as claimed, and it has instructions.
> And it's the instructions that are configured to receive the
> protected content.

7.8 Tr. 22:9–23. Counsel later stated that columns 2 through 4 of the patent disclosed that "[t]he technology is the implementation of the protocol by instructions on the transmitter and the receiver." 7.8 Tr. 28:6–10. But neither the "place[ment]" of the second device into generic devices such as a DVD, computer, CD, CD recorder, or television nor the "implementation" of a protocol by "instructions" provides any information regarding the second device's specific improvement to computer functionality.

Media Content also directed me during oral argument to a specific embodiment in the patent in which "the authenticated distance measurement is

9

5, 28:19 –20, 28:23–34. Media Content first pointed me to the bottom of column 6 of the specification.

> [COUNSEL]: [Column 6] describes a communication
> device for performing authenticated distance
> measurement. And on -- just to jump ahead. It describes
> this communication device could be placed inside
> devices such as a DVD, a computer, a CD, a CD
> recorder, a television, and other devices for accessing
> protected content. So devices such as a television are
> receivers. So this describes a receiver.
>
> THE COURT: So that's just like generic, the effective,
> like, generic components, you know, you buy off the
> shelf.
>
> [COUNSEL]: Yes. So, Your Honor, it has a receiver and
> it has a processor, as claimed, and it has instructions.
> And it's the instructions that are configured to receive the
> protected content.

7.8 Tr. 22:9–23. Counsel later stated that columns 2 through 4 of the patent disclosed that "[t]he technology is the implementation of the protocol by instructions on the transmitter and the receiver." 7.8 Tr. 28:6–10. But neither the "place[ment]" of the second device into generic devices such as a DVD, computer, CD, CD recorder, or television nor the "implementation" of a protocol by "instructions" provides any information regarding the second device's specific improvement to computer functionality.

Media Content also directed me during oral argument to a specific embodiment in the patent in which "the authenticated distance measurement is

9

performed according to the following steps," including "generating a second signal by modifying the received first signal according to the common secret and transmitting the second signal to the first device." 7.8 Tr. 29:12–32:13 (citing #564 patent at 2:61–3:2). When I asked where the patent discloses how the second device is capable of "generating data according to this common secret," 7.8 Tr. 32:14–15, Media Content pointed me to lines 57 through 62 of column 5, which read as follows:

> In a specific example a direct sequence spread spectrum signal is used for distance measurement; this signal could be modified by XORing the chips . . . of the direct sequence codes by the bits of the secret . . . . Also, other mathematical operations as XOR could be used.

#562 patent at 5:57–62. Media Content, however, later acknowledged that XOR operations are known in the prior art and are, in fact, conventional. *See* 7.8 Tr. at 55:15–21.

Thus, although Media Content insists that "the #564 patent's claims are directed to improving a computer's functioning," D.I. 158 at 14, it fails to identify and I do not see in the claims or the specification a sufficient explanation of "how the elements recited in the claims refer to technological features functioning together" to improve technology in a specific way. *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1310 (Fed. Cir. 2020). To the limited extent that the patent describes the claimed apparatus and its operation, the various embodiments

10

incorporate well-known methods, conventional computer components, and ISO standards. *See, e.g.,* #564 patent at 3:21–22 ("In a specific embodiment the first signal is a spread spectrum signal"); 3:36–42 ("In a specific embodiment the first signal and the common secret are bit words and the second signal comprises information being generated by performing an XOR between the bit words. Thereby, it is a very simple operation . . . resulting in demand for few resources"); 3:57–60 ("The secret could be shared using e.g. key transport mechanisms as described in ISO 11770-3. Alternatively, a key agreement protocol could be used, which e.g. is also described in ISO 11770-3); 5:51–65 ("The signal used for the distance measurement may be a normal data bit signal, but also special signals other than for data communication may be used. . . . The authentication [   ] and the exchange of secret [   ] could be performed using the protocols described in some known ISO standards ISO 9798 and ISO 11770).

Media Content also insists that "the sequence" or "the ordering" of the patent's "specific protocol to perform an authentication" as articulated in the "claims as a whole" is the #564 patent's non-generic "inventive technological improvement." 7.8 Tr. 56:16–17; 56:23–57:4; 57:19–22; 19:15–20; 21:1–3; 21:9–12; 26:12–15; 23:11–13. But it does not say how the sequence, order, or combination of the generic methods, components, and standards is nonconventional.

11

In my view, claim 1 of the #564 patent is in all material respects analogous to the claim for an electronic device found to be ineligible for patentability under § 101 by the Federal Circuit in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021). The claim at issue in *Universal Secure Registry* was "directed to an electronic ID device that includes a biometric sensor, user interface, communication interface, and processor working together to (1) authenticate the user based on two factors—biometric information and secret information known to the user—and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device." *Id.* at 1352. The court found telling that "[t]here [wa]s no description in the patent of a specific technical solution by which the biometric information or the secret information is generated, or by which the authentication information is generated and transmitted"; and the court held that the patent's claims "recite[d] conventional actions in a generic way—e.g., authenticating a user using conventional tools and generating and transmitting that authentication—without improving any underlying technology." *Id.* (alteration, internal quotation marks, and citation omitted). In this case, the #564 patent similarly provides no description of a specific technical solution by which the second device is arranged to receive protected information from the first device. Accordingly, the claims are directed to an abstract idea under *Alice* step one.

12

Claim 1 is also analogous to the method claims found to be invalid under § 101 by the Federal Circuit in *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017). The claims at issue in *Prism* taught "an abstract process" that included: "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.* at 1018. The Federal Circuit held that the claimed methods were "abstract," not "concrete" or "specific," and were invalid because they were directed to the abstract idea of "providing restricted access to resources." *Id.* at 1017.

The Federal Circuit cases relied upon by Media Content in its briefing are, with one exception, not applicable here because the patents at issue in those cases offered specific technical improvements to computer security or other computer functions. *See Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1146 (Fed. Cir. 2019) (finding claims eligible because they were directed to "varying the way check data is generated by modifying the permutation applied to different data blocks"); *Ancora Techs.*, 908 F.3d at 1348–1349 (finding claim eligible because it was directed to storing a license record in a "particular, modifiable, non-volatile portion of [a] computer's BIOS . . . for verification by

13

interacting with the distinct computer memory that contains the program to be verified."); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) (finding claim eligible that went "beyond what is required simply by the claim term multi-level security" by claiming an "object-oriented key manager," and the use of a "label" as well as encryption for access management); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020) (finding claims eligible that were directed to reducing the "latency experienced by parked secondary stations in communication systems" by adding "an additional data field for polling"); *Adasa Inc. v. Avery Dennison Corp.*, 55 F. 4th 900 (Fed. Cir. 2022) (finding a claim eligible that was directed to a "a specific, hardware-based RFID serial number data structure designed to enable technological improvements.") The improvements to computer functioning claimed in these cases demonstrated "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving" that result. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

The one exception is *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021).[1] In *CosmoKey*, as in *Universal Secure* and *Prism*, the

---

[1] The Federal Circuit decided *CosmoKey* at the second step of *Alice*, but the distinction between the first and second steps of the *Alice* analysis is porous to the extent that it is decipherable. "[T]here is considerable overlap between step one and step two, and in some situations this analysis could be accomplished without going beyond step one." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d

14

challenged claims were directed to technology configured to verify a user's identity to permit access to a transaction. *See CosmoKey*, 15 F.4th at 1093–1094. The Federal Circuit distinguished *CosmoKey* from *Universal Secure* on the basis that the asserted claims in *Universal Secure* "were directed to the abstract idea of combining multiple conventional, long-standing authentication techniques," and that the increased security was "no greater than the sum of the security provided by each technique alone." *Id.* at 1096. The court held that the relevant patent in *CosmoKey,* by contrast, "depart[ed] from earlier approaches" in a way that was not simply cumulative. *Id.* at 1097. I have read *Universal Secure Registry* and *CosmoKey* numerous times, but I confess that I am unable to understand how either the problem or the solution described in *CosmoKey* is more "specific" or "technological" than those described in *Universal Secure*. But to the extent that the relevant case law draws a line between generic and specific authorization processes, the #564 patent is more like the patents asserted in *Universal Secure* and

---

1288, 1294 (Fed. Cir. 2016). *See CosmoKey*, 15 F.4th at 1101 (Reyna, J., concurring) ("I agree with my colleagues that '[t]he '903 Patent claims and specification recite a specific improvement to authentication that increases security, prevents unauthorized access by a third party, is easily implemented, and can advantageously be carried out with mobile devices of low complexity.' . . . But this is a step-one rationale."); *see also Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1382 n.2 (Fed. Cir. 2017) (Linn, J., dissenting in part and concurring in part) (expressing "serious[] doubt" that "the boundary between steps one and two can somehow be defined").

15

*Prism* than it is like that in *CosmoKey*. The #564 patent covers the abstract idea of combining multiple generic steps—a signal, a certificate, and a time measurement—for authentication, without "speak[ing] to specific or technical problems or solutions." *In re AuthWallet, LLC*, 2023 WL 3330298, at *4 (Fed. Cir. May 10, 2023).

**B.    *Alice* Step Two—Whether the Claims Contain an Additional Inventive Concept**

The #564 patent does not contain additional limitations, whether considered individually or as an ordered combination, that "transform" the claimed abstract idea into patent-eligible subject matter. *Mayo*, 566 U.S. at 72. The claimed device therefore fails step two. *See Alice*, 573 U.S. at 222–23, 225 (considering at step two "[t]he introduction of a computer into the claims" and holding that the use of "a generic computer to perform generic computer functions" does not provide the requisite inventive concept to satisfy step two); *Prism Techs.*, 696 F. App'x at 1017–1018 (holding that, "[v]iewed as an ordered combination, the asserted claims recite[d] no more than the sort of 'perfectly conventional' generic computer components employed in a customary manner" that did "not rise to the level of an inventive concept" and therefore did not "transform the abstract idea into a patent-eligible invention" under *Alice* step two) (quoting *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016)).

16

At oral argument, Media Content argued the combination of certification-based authentication and authenticated distance measurement is an inventive concept. 7.8 Tr. at 59:25–60:17. But "broad and nonspecific" claims that "combine nonspecific, conventional authentication techniques in a non-inventive way" do not recite an inventive concept. *Universal Secure*, 10 F.4th at 1346.

Media Content says that "[t]he claims require the second device be configured for a specific ordering of transmissions and receipts." D.I. 158 at 18–19. But the #564 patent does not explain *how* the second device's "processor circuit" is "arranged" to order the transmission and receipt of these signals. This results-oriented claim describes a desirable outcome but does not offer a way to achieve this result. *Compare Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (finding claims abstract at step two because they did "no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem.") *to Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (identifying an inventive concept in a claimed "specific method of filtering Internet content," which could be achieved by installing "a filtering tool at a specific location.").

17

## IV.   CONCLUSION

For the foregoing reasons, I will grant Realtek's Rule 12(c) Motion for Judgment on the Pleadings for patent invalidity under 35 U.S.C. § 101 (D.I. 144).

The Court will issue an Order consistent with this Memorandum Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDIA CONTENT PROTECTION LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 20-1247-CFC |
| REALTEK SEMICONDUCTOR CORP., | |
| Defendant. | |

## **ORDER**

At Wilmington on this Twenty-eighth day of July in 2025, for the reasons set forth in the Memorandum Opinion issued on this day, it is HEREBY ORDERED that Realtek Semiconductor Corp.'s Motion for Judgment on the Pleadings (D.I. 144) is GRANTED.

_____
CHIEF JUDGE

MEDIA CONTENT PROTECTION LLC,

Plaintiff,

v.

MEDIATEK INC. and
MEDIATEK USA INC.,

Defendants.

C.A. No.: 20-cv-1246-CFC

**JURY TRIAL DEMANDED**

## STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE COURT'S RULING ON A MOTION FOR JUDGMENT ON THE PLEADINGS OF PATENT INELIGIBILITY IN A RELATED CASE

WHEREAS, on July 28, 2025, the Court entered an Order granting Defendant Realtek Semiconductor Corp.'s Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Realtek's Motion) on the grounds that the asserted claims of U.S. Patent No. 10,298,564 are ineligible under 35 U.S.C. § 101 in Case No. 20-cv-01247-CFC (D.I. 212);

WHEREAS, pursuant to the parties' Stipulation and Order entered by the Court in this case on July 10, 2025 (D.I. 196), this action was stayed and the Court's Order on Realtek's Motion applies equally to this Case as if entered directly herein;

NOW, THEREFORE, IT IS HEREBY STIPULATED by Plaintiff Media Content Protection, LLC ("MCP") and Defendants, MediaTek Inc. and

1

MediaTek USA Inc. (collectively, "MediaTek") that, subject to the approval of the Court:

1) the stay of this action is lifted; and

2) an Order granting Judgment on the Pleadings pursuant to Rule 12(c) in favor of MediaTek Inc., in the form attached hereto as Exhibit A, will be entered by the Court.

By entering into this Stipulation, MCP and MediaTek do not waive any rights with respect to the Court's order on Realtek's Motion, including, to the extent applicable, any rights to seek reconsideration of and/or appeal from the Court's order on Realtek's Motion.

Dated: August 1, 2025

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Counsel for Plaintiff
Media Content Protection LLC

Respectfully submitted,

FISH & RICHARDSON, P.C.

/s/ Warren K. Mabey, Jr.
Warren K. Mabey, Jr. (#5775)
Douglas E. McCann (#3852)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899
Tel: (302) 652-5070
mabey@fr.com
dmccann@fr.com

Counsel for Defendants
MediaTek Inc., and
MediaTek USA Inc.

2

SO ORDERED this __4th__ day of _____August_____ , 2025.

_Colm F. Connolly_
THE HONORABLE COLM F. CONNOLLY
CHIEF JUDGE, UNITED STATES DISTRICT
COURT

3

MEDIA CONTENT PROTECTION LLC,

       Plaintiff,

      v.

MEDIATEK INC. and
MEDIATEK USA INC.,

       Defendants.

C.A. No.: 20-cv-1246-CFC

**JURY TRIAL DEMANDED**

## ORDER

WHEREAS, on July 28, 2025, the Court entered an Order granting Defendant Realtek Semiconductor Corp.'s Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Realtek's Motion) on the grounds that the asserted claims of U.S. Patent No. 10,298,564 are ineligible under 35 U.S.C. § 101 in Case No. 20-cv-01247-CFC (D.I. 212);

WHEREAS, that Order applies equally here pursuant to the parties' Stipulation and Court's Order (D.I. 196);

NOW THEREFORE, IT IS HEREBY ORDERED this <u>4th</u> day of <u>August</u>, 2025, that judgment on the pleadings is entered in favor of Defendants and against Plaintiff.

_____
THE HONORABLE COLM F. CONNOLLY
CHIEF JUDGE, UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDIA CONTENT PROTECTION LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-1247-CFC |
| REALTEK SEMICONDUCTOR CORP., | ) ) | |
| Defendant. | ) ) | |

## [PROPOSED] FINAL JUDGMENT

On July 28, 2025, the Court entered a Memorandum Opinion (D.I. 211) and

Order (D.I. 212) granting Defendant Realtek Semiconductor Corp.'s Motion for

Judgment on the Pleadings that the claims asserted by Plaintiff Media Content

Protection LLC in its Second Amended Complaint (D.I. 99) are not patent eligible

(D.I. 144). Consequently, the Court hereby ENTERS FINAL JUDGMENT in

favor of Defendant and against Plaintiff pursuant to Federal Rule of Civil

Procedure 58 that U.S. Patent No. 10,298,564 is invalid under 35 U.S.C. § 101 for

lack of patentable subject matter.

IT IS FURTHER ORDERED that the deadline for any party to move for

costs and attorneys' fees (including under 35 U.S.C. § 285) is extended to thirty

(30) days after the time for appeal has expired or within thirty (30) days after

issuance of the mandate from the appellate court (whichever is later), and no party

shall file any such motion before that time.

DATED: _____8/11/25_____


_____
The Honorable Colm F. Connolly
Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MEDIA CONTENT PROTECTION      )
LLC,      )
     )
      Plaintiff,      )
     )
      v.      )    C.A. No. 20-1246-CFC
     )
MEDIATEK INC. AND      )
MEDIATEK USA INC.,      )
     )
      Defendants.

## [PROPOSED] FINAL JUDGMENT

On July 28, 2025, the Court entered a Memorandum Opinion (D.I. 211) and
Order (D.I. 212) in co-pending Case No. 20-1247-CFC, granting Defendant
Realtek Semiconductor Corp.'s Motion for Judgment on the Pleadings that the
claims asserted by Plaintiff Media Content Protection LLC ("MCP") in its Second
Amended Complaint (D.I. 99) are not patent eligible (D.I. 144). On August 4,
2025, pursuant to MCP and Defendants MediaTek Inc. and MediaTek USA Inc.'s
(collectively, "MediaTek") Stipulation Regarding the Court's Ruling on a Motion
for Judgment on the Pleadings of Patent Ineligibility in a Related Case (D.I. 197;
see also D.I. 198), the Court entered an Order that judgment on the pleadings is
entered in favor of MediaTek and against MCP (D.I. 199).

Consequently, the Court hereby ENTERS FINAL JUDGMENT in favor of
Defendants and against Plaintiff pursuant to Federal Rule of Civil Procedure 58

that U.S. Patent No. 10,298,564 is invalid under 35 U.S.C. § 101 for lack of patentable subject matter.

IT IS FURTHER ORDERED that the deadline for any party to move for costs and attorneys' fees (including under 35 U.S.C. § 285) is extended to thirty (30) days after the time for appeal has expired or within thirty (30) days after issuance of the mandate from the appellate court (whichever is later), and no party shall file any such motion before that time.

DATED: _8 . 15 - 25_

_Colm F. Connolly_
The Honorable Colm F. Connolly
Chief United States District Judge



US010298564B2

(12) **United States Patent**
Kamperman

(10) Patent No.: **US 10,298,564 B2**
(45) Date of Patent: **\*May 21, 2019**

(54) **SECURE AUTHENTICATED DISTANCE MEASUREMENT**

(71) Applicant: **KONINKLIJKE PHILIPS N.V.,** Eindhoven (NL)

(72) Inventor: **Franciscus L. A. J. Kamperman,** Geldrop (NL)

(73) Assignee: **KONINKLIJKE PHILIPS N.V.,** Eindhoven (NL)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **16/117,019**

(22) Filed: **Aug. 30, 2018**

(65) **Prior Publication Data**

US 2019/0014106 A1    Jan. 10, 2019

**Related U.S. Application Data**

(63) Continuation of application No. 15/352,646, filed on Nov. 16, 2016, now Pat. No. 10,091,186. which is a
(Continued)

(30) **Foreign Application Priority Data**

Jul. 26, 2002    (EP) .................................... 02078076

(51) **Int. Cl.**
| | |
|---|---|
| *H04L 29/06* | (2006.01) |
| *H04L 9/14* | (2006.01) |
(Continued)

(52) **U.S. Cl.**
CPC .......... *H04L 63/0823* (2013.01); *G06F 21/10* (2013.01); *H04L 9/14* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ..... H04L 63/0823; H04L 9/14; H04L 63/107; H04L 63/062; H04L 43/16;
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,438,824 A | 3/1984 | Mueller-Scholoer |
| 4,688,036 A | 8/1987 | Hirano et al. |
(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1100035 A1 | 5/2001 |
| JP | H04306760 A | 10/1992 |
(Continued)

OTHER PUBLICATIONS

Ikeno et al "Modern Cryptography Theory" Japan, Institute of Electronics, Information and Communication Engineers, Nov. 15, 1997, p. 175-177.
(Continued)

*Primary Examiner* — Darren B Schwartz

(57) **ABSTRACT**

The invention relates to a method for a first communication device to perform authenticated distance measurement between the first communication device and a second communication device, wherein the first and the second communication device share a common secret and the common secret is used for performing the distance measurement between the first and the second communication device. The invention also relates to a method of determining whether data stored on a first communication device are to be accessed by a second communication device. Moreover, the invention relates to a communication device for performing authenticated distance measurement to a second communication device. The invention also relates to an apparatus for playing back multimedia content comprising a communication device.

**53 Claims, 3 Drawing Sheets**



## Related U.S. Application Data

continuation of application No. 15/229,207, filed on Aug. 5, 2016, now Pat. No. 9,590,977, which is a continuation of application No. 14/538,493, filed on Nov. 11, 2014, now Pat. No. 9,436,809, which is a continuation of application No. 10/521,858, filed as application No. PCT/IB03/02932 on Jun. 27, 2003, now Pat. No. 8,886,939.

(51) **Int. Cl.**

| | |
|---|---|
| *H04L 12/26* | (2006.01) |
| *H04L 9/32* | (2006.01) |
| *G06F 21/10* | (2013.01) |
| *H04L 9/30* | (2006.01) |
| *H04W 24/00* | (2009.01) |
| *H04W 12/06* | (2009.01) |

(52) **U.S. Cl.**
CPC ............. *H04L 9/30* (2013.01); *H04L 9/3263* (2013.01); *H04L 43/0852* (2013.01); *H04L 43/16* (2013.01); *H04L 63/062* (2013.01); *H04L 63/107* (2013.01); *G06F 2221/07* (2013.01); *G06F 2221/2111* (2013.01); *H04L 63/0428* (2013.01); *H04L 2463/101* (2013.01); *H04W 12/06* (2013.01); *H04W 24/00* (2013.01)

(58) **Field of Classification Search**
CPC ..... H04L 43/0852; H04L 9/3263; H04L 9/30; H04L 63/0428; H04L 2463/101; G06F 21/10; G06F 2221/07; G06F 2221/2111; H04W 24/00; H04W 12/06
See application file for complete search history.

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,926,480 A | 5/1990 | Chaum | |
| 5,126,746 A | 6/1992 | Gritton | |
| 5,596,641 A | 1/1997 | Ohashi et al. | |
| 5,602,917 A | 2/1997 | Mueller | |
| 5,659,617 A | 8/1997 | Fischer | |
| 5,723,911 A | 3/1998 | Glehr | |
| 5,778,071 A | 7/1998 | Caputo et al. | |
| 5,937,065 A | 8/1999 | Simon et al. | |
| 5,949,877 A | 9/1999 | Traw et al. | |
| 5,983,347 A | 11/1999 | Brinkmeyer et al. | |
| 6,085,320 A | 7/2000 | Kaliski | |
| 6,088,450 A | 7/2000 | Davis et al. | |
| 6,151,676 A | 11/2000 | Cuccia et al. | |
| 6,208,239 B1 | 3/2001 | Muller et al. | |
| 6,346,878 B1 | 2/2002 | Pohlman et al. | |
| 6,351,235 B1 | 2/2002 | Stilp | |
| 6,442,690 B1 | 8/2002 | Howard, Jr. | |
| 6,484,948 B1 | 11/2002 | Sonoda | |
| 6,493,825 B1 | 12/2002 | Blumenau et al. | |
| 6,526,598 B1 | 3/2003 | Horn | |
| 6,550,011 B1 * | 4/2003 | Sims, III ................. | G06F 21/10 |
| | | | 365/52 |
| 7,200,233 B1 | 4/2007 | Keller et al. | |
| 7,242,766 B1 | 7/2007 | Lyle | |
| 7,516,325 B2 | 4/2009 | Willey | |
| 7,787,865 B2 | 8/2010 | Willey | |
| 7,898,977 B2 | 3/2011 | Roese | |
| 8,068,610 B2 | 11/2011 | Moroney | |
| 8,107,627 B2 | 1/2012 | Epstein | |
| 8,352,582 B2 | 1/2013 | Epstein | |
| 8,997,243 B2 | 3/2015 | Epstein | |
| 2001/0008558 A1 | 7/2001 | Hirahaji | |
| 2001/0043702 A1 | 11/2001 | Elteto et al. | |
| 2001/0044786 A1 | 11/2001 | Ishibashi | |
| 2001/0050990 A1 * | 12/2001 | Sudia ................... | G06Q 20/02 |
| | | | 380/286 |
| 2002/0007452 A1 * | 1/2002 | Traw ................... | G06F 21/10 |
| | | | 713/152 |
| 2002/0026424 A1 | 2/2002 | Akashi | |
| 2002/0026576 A1 | 2/2002 | Das-Purkayastha et al. | |
| 2002/0035690 A1 | 3/2002 | Nakano | |
| 2002/0061748 A1 | 5/2002 | Nakakita et al. | |
| 2002/0078227 A1 | 6/2002 | Kronenberg | |
| 2002/0166047 A1 | 11/2002 | Kawamoto | |
| 2003/0021418 A1 | 1/2003 | Arakawa et al. | |
| 2003/0030542 A1 | 2/2003 | Von Hoffmann | |
| 2003/0051151 A1 | 3/2003 | Asano | |
| 2003/0065918 A1 | 4/2003 | Willey | |
| 2003/0070092 A1 | 4/2003 | Hawkes et al. | |
| 2003/0112978 A1 | 6/2003 | Rodman et al. | |
| 2003/0174838 A1 * | 9/2003 | Bremer ........... | H04L 63/0428 |
| | | | 380/270 |
| 2003/0184431 A1 | 10/2003 | Lundkvist | |
| 2003/0220765 A1 | 11/2003 | Overy et al. | |
| 2004/0015693 A1 | 1/2004 | Kitazumi | |
| 2004/0025018 A1 * | 2/2004 | Haas ................... | H04L 45/26 |
| | | | 713/168 |
| 2004/0080426 A1 | 4/2004 | Fraenkel | |
| 2005/0114647 A1 | 5/2005 | Epstein | |
| 2005/0265503 A1 | 12/2005 | Rofheart et al. | |
| 2006/0294362 A1 | 12/2006 | Epstein | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | H0619948 A | 1/1994 |
| JP | H08234658 A | 9/1996 |
| JP | 9170364 A | 6/1997 |
| JP | H09170364 A | 6/1997 |
| JP | 11101035 A | 4/1999 |
| JP | 11208419 A | 8/1999 |
| JP | 2000357156 A | 12/2000 |
| JP | 2001249899 A | 9/2001 |
| JP | 2001257672 A | 9/2001 |
| JP | 2002124960 | 4/2002 |
| JP | 2002189966 A | 7/2002 |
| WO | 9739553 A1 | 10/1997 |
| WO | 9949378 | 9/1999 |
| WO | 0152234 A1 | 7/2001 |
| WO | 0193434 A1 | 12/2001 |
| WO | 0233887 A2 | 4/2002 |
| WO | 0235036 A1 | 5/2002 |
| WO | 02054353 A1 | 7/2002 |

### OTHER PUBLICATIONS

Modern Cryptography Theory (1986) Chapter 9, ISBN: 4-88552-064-9 (Japanese).

Hayashi et al Encryption and Authentication Program Module , Technical Paper (Japanese) NTT R&D vol. 44, No. 10 Oct. 1, 1995.

Stefan Brands and Devid Chaum "Distance Bounding Protocols" Eurocrypt '93, (1993) p. 344-359.

Tim Kindber & Kan Zhang "Context Authentin Using Constrained Channels" pp. 1-8 , Apr. 16, 2001.

Hitachi Ltd., 5C Digital Transmission Content Protection White Paper Rev. 1.0 Jul. 14, 1998, p. 1013.

Boyd et al "Protocols for Authention and Key Establishment" Spring-Verlag, Sep. 17, 2003, p. 116-120, 195, 305.

High Bandwidth Digital Content Protection System Feb. 17, 2000.

High Bandwidth Digital Content Protection System Revision 1.0 Erratum Mar. 1, 2001.

Digital Transmission Content Protection Specification vol. 1 Hitachi Ltd. Revision 1.0 Apr. 12, 1999.

Digital Transmission Content Protection Specification vol. 1 (Informational Version) Hitachi Ltd. Revision 1.2A Feb. 25, 2002.

SmartRight™ Certification for FCC Approval for Use with the Broadcast Flag, Mar. 1, 2004.

SmartRight™ Copy Protection for System for Digital Home Networks, Deployment Process, CPTWG, Nov. 28, 2001.

SmartRight™ Copy Protection System for Digital Home Networks, CPTWG, May 24, 2001.

SmartRight™ Digital Broadcast Content Protection, Presentation to FCC, Apr. 2, 2004 (cited in litigation).

(56) **References Cited**

OTHER PUBLICATIONS

SmartRight™ Technical White Paper, Version 1.7, Jan. 2003 ("White Paper") (cited in litigation).

Internet Security Association and Key Management Protocol (ISAKMP), Request for Comments 2408 ("RFC 2408")—cited in litigation, Nov. 1998.

International Standard ISO/IEC 11770-3 (1st ed.) ("ISO 11770-3") , Nov. 1, 1999.

Scott Crosby, et al., "A Cryptanalysis of the High-bandwidth Digital Content Protection System " Computer and Communications Security, (2001).

SmartRight™ Specifications Sep. 26, 2001.

SmartRight™ Copy Protection System for Digital Home Networks, CPTWG, Jul. 11, 2001.

Bruce Schneier, Applied Cryptography (2d ed. 1996) ("Schneier").

Steven M. Bellovin and Michael Merritt, "Encrypted Key Exchange: Password-Based Protocols Secure Against Dictionary Attacks", 2002.

RFC 2463 Internet Control Message Protocol Dec. 1998.

RFC2246 the TLS Protocol, Jan. 1999.

Internet Security Association and Key Management Protocol (ISAKMP), Request for Comments 2408 ("RFC 2408") , Nov. 1998.

Declaration of William Rosenblatt, Microsoft Exhibit 1009 , Dec. 8, 2017.

Supplemental Declaration of William Rosenblatt, Microsoft Exhibit 1015 , Apr. 20, 2018.

Petition for Inter Parties Review of USP 8543819 , Dec. 8, 2017.

Patent Owner's Preliminary Response , Mar. 13, 2018.

Petitioners' Reply to Patent Owner's Preliminary Response , Apr. 20, 2018.

Patent Owner's Sur-Reply to Petitioners' Reply , May 4, 2018.

Petition for Inter Parties Review of USP 9436809 , Dec. 8, 2017.

Markman Order Filed Jul. 11, 2017.

Internet Security Association and Key Management Protocol (ISAKMP), Request for Comments 2407 ("RFC 2407") , Nov. 1998.

Internet Security Association and Key Management Protocol (ISAKMP), Request for Comments 2409 ("RFC 2409") , Nov. 1998.

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4

# SECURE AUTHENTICATED DISTANCE MEASUREMENT

This application is a continuation of the patent application entitled "Secure Authenticated Distance Measurement", filed on Nov. 16, 2016 and afforded Ser. No. 15/352,646 which is a continuation of the application filed Aug. 5, 2016 and afforded Ser. No. 15/229,207 which is a continuation of the application filed Nov. 11, 2014 and afforded Ser. No. 14/538,493 which claims priority pursuant to 35 USC 120, priority to and the benefit of the earlier filing date of. that patent application entitled "Secure Authenticated Distance Measurement", filed on Jan. 21, 2005 and afforded Ser. No. 10/521,858 (now U.S. Pat. No. 8,886,939), which claimed priority to and the benefit of the earlier filing date, as a National Stage Filing of that international patent application filed on Jun. 27, 2003 and afforded serial number PCT/IB2003/02932 (WO2004014037), which claimed priority to and the benefit of the earlier filing date of that patent application filed on Jul. 26, 2002 and afforded serial number EP 02078076.3, the contents of all of which are incorporated by reference, herein.

This application is further related to that patent application entitled "Secure authenticated Distance Measurement", filed on Jul. 24, 2009 and afforded Ser. No. 12/508,917 (now U.S. Pat. No. 8,543,819), issued Sep. 24, 2013), which claimed priority to and the benefit of the earlier filing date of that patent application entitled "Secure Authenticated Distance Measurement", filed on Jan. 21, 2005 and afforded Ser. No. 10/521,858 (now U.S. Pat. No. 8,886,939), the contents of which are incorporated by reference herein.

The invention relates to a method for a first communication device to performing authenticated distance measurement between a first communication device and a second communication device. The invention also relates to a method of determining whether data stored on a first communication device is to be accessed by a second communication device. Moreover, the invention relates to a communication device for performing authenticated distance measurement to a second communication device. The invention also relates to an apparatus for playing back multimedia content comprising a communication device.

Digital media have become popular carriers for various types of data information. Computer software and audio information, for instance, are widely available on optical compact disks (CDs) and recently also DVD has gained in distribution share. The CD and the DVD utilize a common standard for the digital recording of data, software, images, and audio. Additional media, such as recordable discs, solid-state memory, and the like, are making considerable gains in the software and data distribution market.

The substantially superior quality of the digital format as compared to the analog format renders the former substantially more prone to unauthorized copying and pirating, further a digital format is both easier and faster to copy. Copying of a digital data stream, whether compressed, uncompressed, encrypted or non-encrypted, typically does not lead to any appreciable loss of quality in the data. Digital copying thus is essentially unlimited in terms of multi-generation copying. Analog data with its signal to noise ratio loss with every sequential copy, on the other hand, is naturally limited in terms of multi-generation and mass copying.

The advent of the recent popularity in the digital format has also brought about a slew of copy protection and DRM systems and methods. These systems and methods use

technologies such as encryption, watermarking and right descriptions (e.g. rules for accessing and copying data).

One way of protecting content in the form of digital data is to ensure that content will only be transferred between devices if

- the receiving device has been authenticated as being a compliant device, and
- the user of the content has the right to transfer (move, copy) that content to another device.

If transfer of content is allowed, this will typically be performed in an encrypted way to make sure that the content cannot be captured illegally in a useful format.

Technology to perform device authentication and encrypted content transfer is and is called a secure authenticated channel (SAC). Although it might be allowed to make copies of content over a SAC, the content industry is very bullish on content distribution over the Internet. This results in disagreement of the content industry on transferring content over interfaces that match well with the Internet, e.g. Ethernet.

Further, it should be possible for a user visiting his neighbor to watch a movie, which he owns, on the neighbor's big television screen. Typically, the content owner will disallow this, but it might become acceptable if it can be proved that a license holder is available and is near (or a device that the license holder owns) is near that television screen.

It is therefore of interest to be able to include an authenticated distance measurement when deciding whether content should be accessed or copied by other devices.

In the article by Stefan Brands and David Chaum, "Distance-Bounding protocols", Eurocrypt '93 (1993), Pages 344-359, integration of distance-bounding protocols with public-key identification schemes is described. Here distance measurement is described based on time measurement using challenge and response bits and with the use of a commitment protocol. This does not allow authenticated device compliancy testing and is not efficient when two devices must also authenticate each other.

It is an object of the invention to obtain a solution to the problem of performing a secure transfer of content within a limited distance.

This is obtained by a method for a first communication device to performing authenticated distance measurement between the first communication device and a second communication device, wherein the first and the second communication device share a common secret and the common secret is used for performing the distance measurement between the first and the second communication device.

Because the common secret is being used for performing the distance measurement, it can be ensured that when measuring the distance from the first communication device to the second communication device, it is the distance between the right devices that is being measured.

The method combines a distance measurement protocol with an authentication protocol. This enables authenticated device compliancy testing and is efficient, because a secure channel is anyhow needed to enable secure communication between devices and a device can first be tested on compliancy before a distance measurement is executed.

In a specific embodiment, the authenticated distance measurement is performed according to the following steps,

transmitting a first signal from the first communication device to the second communication device at a first time t1, the second communication device being adapted for receiving the first signal, generating a second signal by modifying the received first signal

according to the common secret and transmitting the second signal to the first device,

receiving the second signal at a second time t2,

checking if the second signal has been modified according to the common secret,

determining the distance between the first and the second communication device according to a time difference between t1 and t2.

When measuring a distance by measuring the time difference between transmitting and receiving a signal and using a secret, shared between the first and the second communication device, for determining whether the returned signal really originated from the second communication device, the distance is measured in a secure authenticated way ensuring that the distance will not be measured to a third communication device (not knowing the secret). Using the shared secret for modifying the signal is a simple way to perform a secure authenticated distance measurement.

In a specific embodiment the first signal is a spread spectrum signal. Thereby a high resolution is obtained and it is possible to cope with bad transmission conditions (e.g. wireless environments with a lot of reflections).

In another embodiment the step of checking if the second signal has been modified according to the common secret is performed by the steps of,

generating a third signal by modifying the first signal according to the common secret,

comparing the third signal with the received second signal.

This method is an easy and simple way of performing the check, but it requires that both the first communication device and the second communication device know how the first signal is being modified using the common secret.

In a specific embodiment the first signal and the common secret are bit words and the second signal comprises information being generated by performing an XOR between the bit words. Thereby, it is a very simple operation that has to be performed, resulting in demand for few resources by both the first and the second communication device when performing the operation.

In an embodiment the common secret has been shared before performing the distance measurement, the sharing being performed by the steps of,

performing an authentication check from the first communication device on the second communication device by checking whether the second communication device is compliant with a set of predefined compliance rules,

if the second communication device is compliant, sharing the common secret by transmitting the secret to the second communication device.

This is a secure way of performing the sharing of the secret, ensuring that only devices being compliant with compliance rules can receive the secret. Further, the shared secret can afterwards be used for generating a SAC channel between the two devices. The secret could be shared using e.g. key transport mechanisms as described in ISO 11770-3. Alternatively, a key agreement protocol could be used, which e.g. is also described in ISO 11770-3.

In another embodiment the authentication check further comprises checking if the identification of the second device is compliant with an expected identification. Thereby, it is ensured that the second device really is the device that it should be. The identity could be obtained by checking a certificate stored in the second device.

The invention also relates to a method of determining whether data stored on a first communication device are to be accessed by a second communication device, the method comprising the step of performing a distance measurement between the first and the second communication device and checking whether the measured distance is within a predefined distance interval, wherein the distance measurement is an authenticated distance measurement according to the above. By using the authenticated distance measurement in connection with sharing data between devices, unauthorized distribution of content can be reduced.

In a specific embodiment the data stored on the first device is sent to the second device if it is determined that the data stored on the first device are to be accessed by the second device.

The invention also relates to a method of determining whether data stored on a first communication device are to be accessed by a second communication device, the method comprising the step of performing a distance measurement between a third communication device and the second communication device and checking whether the measured distance is within a predefined distance interval, wherein the distance measurement is an authenticated distance measurement according to the above. In this embodiment, the distance is not measured between the first communication device, on which the data are stored, and the second communication device. Instead, the distance is measured between a third communication device and the second communication device, where the third communication device could be personal to the owner of the content.

The invention also relates to a communication device for performing authenticated distance measurement to a second communication device, where the communication device shares a common secret with the second communication device and where the communication device comprises means for measuring the distance to the second device using the common secret.

In an embodiment the device comprises:

means for transmitting a first signal to a second communication device at a first time t1, the second communication device being adapted for receiving the first signal, generating a second signal by modifying the received first signal according to the common secret and transmitting the second signal,

means for receiving the second signal at a second time t2,

means for checking if the second signal has been modified according to the common secret, and

means for determining the distance between the first and the second communication device according to a time difference between t1 and t2.

The invention also relates to an apparatus for playing back multimedia content comprising a communication device according to the above.

In the following preferred embodiments of the invention will be described referring to the figures, wherein:

FIG. 1 illustrates authenticated distance measurement being used for content protection,

FIG. 2 is a flow diagram illustrating the method of performing authenticated distance measurement,

FIG. 3 illustrates in further detail the step of performing the authenticated distance measurement shown in FIG. 2,

FIG. 4 illustrates a communication device for performing authenticated distance measurement.

FIG. 1 illustrates an embodiment where authenticated distance measurement is being used for content protection. In the center of the circle 101 a computer 103 is placed. The computer comprises content, such as multimedia content

5

being video or audio, stored on e.g. a hard disk, DVD or a CD. The owner of the computer owns the content and therefore the computer is authorized to access and present the multimedia content for the user. When the user wants to make a legal copy of the content to another device via e.g. a SAC, the distance between the other device and the computer 103 is measured and only devices within a predefined distance illustrated by the devices 105, 107, 109, 111, 113 inside the circle 101 are allowed to receive the content. Whereas the devices 115, 117, 119 having a distance to the computer 101 being larger than the predefined distance are not allowed to receive the content.

In the example a device is a computer, but it could e.g. also be a DVD drive, a CD drive or a Video, as long as the device comprises a communication device for performing the distance measurement.

In a specific example the distance might not have to be measured between the computer, on which the data are stored, and the other device, it could also be a third device e.g. a device being personal to the owner of the content which is within the predefined distance.

In FIG. 2 a flow diagram illustrates the general idea of performing authenticated distance measurement between two devices, 201 and 203 each comprising communication devices for performing the authenticated distance measurement. In the example the first device 201 comprises content which the second device 203 has requested. The authenticated distance measurement then is as follows. In step 205 the first device 201 authenticates the second device 203; this could comprise the steps of checking whether the second device 203 is a compliant device and might also comprise the step of checking whether the second device 203 really is the device identified to the first device 201. Then in step 207, the first device 201 exchanges a secret with the second device 203, which e.g. could be performed by transmitting a random generated bit word to second device 203. The secret should be shared securely, e.g. according to some key management protocol as described in e.g. ISO 11770.

Then in step 209, a signal for distance measurement is transmitted to the second device 203; the second device modifies the received signal according to the secret and retransmits the modified signal back to the first device. The first device 201 measures the round trip time between the signal leaving and the signal returning and checks if the returned signal was modified according to the exchanged secret. The modification of the returned signal according to some secret will most likely be dependent on the transmission system and the signal used for distance measurement, i.e. it will be specific for each communication system (such as 1394, Ethernet, Bluetooth, IEEE 802.11, etc.).

The signal used for the distance measurement may be a normal data bit signal, but also special signals other than for data communication may be used. In an embodiment spread spectrum signals are used to be able to get high resolution and to be able to cope with bad transmission conditions (e.g. wireless environments with a lot of reflections).

In a specific example a direct sequence spread spectrum signal is used for distance measurement; this signal could be modified by XORing the chips (e.g. spreading code consisting of 127 chips) of the direct sequence code by the bits of the secret (e.g. secret consists of 127 bits). Also, other mathematical operations as XOR could be used.

The authentication 205 and exchange of secret 207 could be performed using the protocols described in some known ISO standards ISO 9798 and ISO 11770. For example the first device 201 could authenticate the second device 203 according to the following communication scenario:

6

First device→Second device: $R_B$‖Text 1

where $R_B$ is a random number

Second device→First device: CertA‖TokenAB

Where CertA is a certificate of A

TokenAB=$R_A$‖$R_B$‖B‖Text3‖s$S_A$($R_A$‖$R_B$‖B)‖Text2)

$R_A$ is a random number

Indentifier B is an option

s$S_A$ is a signature set by A using private key $S_A$

If TokenAB is replaced with the token as specified in ISO 11770-3 we at the same time can do secret key exchange. We can use this by substituting Text2 by:

Text2:=e$P_B$(A‖K‖Text2)‖Text3

Where e$P_B$ is encrypted with Public key B

A is identifier of A

K is a secret to be exchanged

In this case the second device 203 determines the key (i.e. has key control), this is also called a key transport protocol, but also a key agreement protocol could be used. This may be undesirable in which case it can be reversed, such that the first device determines the key. A secret key has now been exchanged according to step 207 in FIG. 2. Again, the secret key could be exchanged by e.g. a key transport protocol or a key agreement protocol.

After the distance has been measured in a secure authenticated way as described above content, data can be sent between the first and the second device in step 211 in FIG. 2.

FIG. 3 illustrates in further detail the step of performing the authenticated distance measurement. As described above the first device 301 and the second device 303 have exchanged a secret; the secret is stored in the memory 305 of the first device and the memory 307 of the second device. In order to perform the distance measurement, a signal is transmitted to the second device via a transmitter 309. The second device receives the signal via a receiver 311 and 313 modifies the signal by using the locally stored secret. The signal is modified according to rules known by the first device 301 and transmitted back to the first device 301 via a transmitter 315. The first device 301 receives the modified signal via a receiver 317 and in 319 the received modified signal is compared to a signal, which has been modified locally. The local modification is performed in 321 by using the signal transmitted to the second device in transmitter 309 and then modifying the signal using the locally stored secret similar to the modification rules used by the second device. If the received modified signal and the locally modified signal are identical, then the received signal is authenticated and can be used for determining the distance between the first and the second device. If the two signals are not identical, then the received signal cannot be authenticated and can therefore not be used for measuring the distance as illustrated by 325. In 323 the distance is calculated between the first and the second device; this could e.g. be performed by measuring the time, when the signal is transmitted by the transmitter 309 from the first device to the second device and measuring when the receiver 317 receives the signal from the second device. The time difference between transmittal time and receive time can then be used for determining the physical distance between the first device and the second device.

In FIG. 4 a communication device for performing authenticated distance measurement is illustrated. The device 401 comprises a receiver 403 and a transmitter 411. The device further comprises means for performing the steps described above, which could be by executing software using a microprocessor 413 connected to memory 415 via a communication bus 417. The communication device could then be

placed inside devices such as a DVD, a computer, a CD, a CD recorder, a television and other devices for accessing protected content.

The invention claimed is:

**1.** A second device for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:

    provide a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;

    receive the first signal when the certificate indicates that the second device is compliant with at least one compliance rule;

    create a second signal, wherein the second signal is derived from a secret known by the second device;

    provide the second signal to the first device after receiving the first signal, wherein the second signal is received by the first device; and

    receive the protected content from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.

**2.** The second device of claim **1**, wherein the secret is securely provided to the second device by the first device.

**3.** The second device of claim **2**, wherein determining that the second signal is derived from the secret comprises:

    modifying the first signal, wherein the modifying requires the secret; and

    determining that the modified first signal is identical to the second signal.

**4.** The second device of claim **2**, wherein determining that the second signal is derived from the secret comprises:

    modifying the first signal; and

    determining that the modified first signal is identical to the second signal.

**5.** The second device of claim **2**, wherein the predetermined time is based on a communication system associated with the first device.

**6.** The second device of claim **2**, further comprising instructions arranged to receive the secret from the first device.

**7.** The second device of claim **2**, wherein the second signal comprises the first signal modified by the secret.

**8.** The second device of claim **2**, wherein the secret comprises a random number.

**9.** The second device of claim **2**, wherein the secret is encrypted with a public key.

**10.** The second device of claim **2**, wherein the first signal comprises a random number.

**11.** The second device of claim **2**, wherein the second signal comprises an XOR operation of the first signal with the secret.

**12.** The second device of claim **2**, wherein determining that the second signal is derived from the secret comprises:

    modifying the second signal, wherein the modifying requires the secret; and

    determining that the modified second signal is identical to the first signal.

**13.** The second device of claim **2**, wherein determining that the second signal is derived from the secret comprises:

    modifying the second signal; and

    determining that the modified second signal is identical to the first signal.

**14.** The second device of claim **2**, wherein the secret is used for generating a secure channel between the first device and the second device.

**15.** The second device of claim **1**, wherein determining that the second signal is derived from the secret comprises:

    modifying the first signal, wherein the modifying requires the secret; and

    determining that the modified first signal is identical to the second signal.

**16.** The second device of claim **1**, wherein determining that the second signal is derived from the secret comprises:

    modifying the first signal; and

    determining that the modified first signal is identical to the second signal.

**17.** The second device of claim **1**, wherein the predetermined time is based on a communication system associated with the first device.

**18.** The second device of claim **1**, further comprising instructions arranged to receive the secret from the first device.

**19.** The second device of claim **1**, wherein the second signal comprises the first signal modified by the secret.

**20.** The second device of claim **1**, wherein the secret comprises a random number.

**21.** The second device of claim **1**, wherein the secret is encrypted with a public key.

**22.** The second device of claim **1**, wherein the first signal comprises a random number.

**23.** The second device of claim **1**, wherein the second signal comprises an XOR operation of the first signal with the secret.

**24.** The second device of claim **1**, further comprising instructions arranged to provide the secret to the first device.

**25.** The second device of claim **1**, wherein the secret is used for generating a secure channel between the first device and the second device.

**26.** The second device of claim **1**, wherein determining that the second signal is derived from the secret comprises:

    modifying the second signal, wherein the modifying requires the secret; and

    determining that the modified second signal is identical to the first signal.

**27.** The second device of claim **1**, wherein determining that the second signal is derived from the secret comprises:

    modifying the second signal; and

    determining that the modified second signal is identical to the first signal.

**28.** The second device of claim **1**, wherein the secret is known by the first device.

**29.** A method of receiving a protected content sent from a first device to a second device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions implementing the method, the method comprising:

    providing a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;

    receiving the first signal form the first device when the certificate indicates that the second device is compliant with at least one compliance rule;

    creating a second signal, wherein the second signal is derived from a secret known by the second device;

    providing the second signal to the first device after receiving the first signal, wherein the second signal is received by the first device;

receiving the protected content from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time.

**30**. The method of claim **29**, wherein the secret is securely provided to the second device by the first device.

**31**. The method of claim **30**, wherein determining that the second signal is derived from the secret comprises:

modifying the first signal, wherein the modifying requires the secret; and

determining that the modified first signal is identical to the second signal.

**32**. The method of claim **31**, wherein the second signal comprises an XOR operation of the first signal with the secret.

**33**. The method of claim **31**, wherein the secret comprises a first random number.

**34**. The method of claim **33**, wherein the secret is used for generating a secure channel between the first device and the second device.

**35**. The method of claim **33**, wherein the secret is encrypted with a public key.

**36**. The method of claim **35**, wherein the first signal comprises a second random number.

**37**. The method of claim **30**, wherein determining that the second signal is derived from the secret comprises:

modifying the first signal; and

determining that the modified first signal is identical to the second signal.

**38**. The method of claim **30**, wherein the second signal comprises the first signal modified by the secret.

**39**. The method of claim **30**, wherein determining that the second signal is derived from the secret comprises:

modifying the second signal, wherein the modifying requires the secret; and

determining that the modified second signal is identical to the first signal.

**40**. The method of claim **30**, wherein determining that the second signal is derived from the secret comprises:

modifying the second signal, wherein the modifying requires the secret; and

determining that the modified second signal is identical to the first signal.

**41**. The method of claim **29**, wherein determining that the second signal is derived from the secret comprises:

modifying the first signal, wherein the modifying requires the secret; and

determining that the modified first signal is identical to the second signal.

**42**. The method of claim **29**, wherein determining that the second signal is derived from the secret comprises:

modifying the first signal; and

determining that the modified first signal is identical to the second signal.

**43**. The method of claim **29**, wherein the predetermined time is based on a communication system associated with the first device.

**44**. The method of claim **29**, further comprising receiving the secret from the first device.

**45**. The method of claim **29**, wherein the second signal comprises the first signal modified by the secret.

**46**. The method of claim **29**, wherein the secret comprises a random number.

**47**. The method of claim **29**, wherein the secret is encrypted with a public key.

**48**. The method of claim **29**, wherein the first signal comprises a random number.

**49**. The method of claim **29**, wherein the second signal comprises an XOR operation of the first signal with the secret.

**50**. The method of claim **29**, further comprising providing the secret to the first device.

**51**. The method of claim **29**, wherein the secret is used for generating a secure channel between the first device and the second device.

**52**. The method of claim **29**, wherein determining that the second signal is derived from the secret comprises:

modifying the second signal, wherein the modifying requires the secret; and

determining that the modified second signal is identical to the first signal.

**53**. The method of claim **29**, wherein determining that the second signal is derived from the secret comprises:

modifying the second signal; and

determining that the modified second signal is identical to the first signal.

* * * * *

**CERTIFICATE OF SERVICE**

**Case Numbers:** 2025-2041, 2025-2045

**Short Case Caption:** *Media Content Protection LLC v. Realtek Semiconductor Corporation, MediaTek, Inc., MediaTek USA, Inc.*

I certify that I served a copy of the foregoing filing on February 9, 2026 by email on the below individuals at the following locations.

| Person Served | Service Location |
|---|---|
| Elizabeth R. Moulton<br>ORRICK, HERRINGTON<br>& SUTCLIFFE LLP | 405 Howard St<br>San Francisco, CA 94105<br>emoulton@orrick.com |
| Christopher J. Higgins<br>Brenna Ferris Neustater<br>ORRICK, HERRINGTON<br>& SUTCLIFFE LLP | 2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>chiggins@orrick.com<br>bneustater@orrick.com |
| Joseph V. Colaianni Jr.<br>Linhong Zhang<br>Jared Hartzman<br>FISH & RICHARDSON P.C. | 1000 Maine Ave SW Ste 1000<br>Washington, DC 20024<br>colaianni@fr.com<br>lwzhang@fr.com |

Date: February 9, 2026

*/s/ Peter F. Snell*
Peter F. Snell

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

**Case Numbers:** 2025-2041, 2025-2045

**Short Case Caption:** *Media Content Protection LLC v. Realtek Semiconductor Corporation, MediaTek, Inc., MediaTek USA, Inc.*

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and the Federal Circuit rules because the filing has been prepared using a proportionally-spaced typeface and includes 13,908 words.

Date: February 9, 2026                    /s/ Peter F. Snell
                                          Peter F. Snell